MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, Appellee,

v.

MULLINS, Appellant, et al.

Mullins, Appellant,

v.

Title First Agency, Inc., et al., Appellees.

[Cite as *Mtge. Electronic Registrations Sys. v. Mullins,*
161 Ohio App.3d 12, 2005-Ohio-2303.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 04CA40.

Decided May 5, 2005.

14

Adam J. Baker, for appellants.

Buckley King, L.P.A., and Philip L. Judy, for appellee Title First Agency, Inc.

PETER B. ABELE, Presiding Judge.

{¶ 1} This is an appeal from an Athens County Common Pleas Court judgment that ordered the foreclosure of a mortgage and sale of property owned by Jerry M. Mullins, defendant below and appellant herein.[1]

{¶ 2} Appellant assigns the following error for review:

The trial court erred in granting Title First's motion for summary judgment dated January 28, 2004 and MERS' motion for summary judgment dated August 30, 2004. Both decisions were based upon appellant's bankruptcy failing to list the appellant's claim against Title First and MERS.

---

1. On April 22, 2005, appellant Mullins and appellee Mortgage Electronic Registrations System submitted to the court an agreed entry and order to dismiss the appeal as between them. The appeal involving appellee Mullins and appellee Title First Agency, Inc. was unaffected by the agreed entry and order.

{¶ 3} In February 1999, appellant borrowed $145,800 from United Companies Lending Corporation ("United"). In return, he executed a promissory note and agreed to repay that sum plus 10.49% interest over a 30–year period. As security for that debt, he executed an open-end mortgage that granted United a mortgage interest in his real property at 4745 Baker Road, New Marshfield. There have been various mesne assignments of the note and mortgage over the years, and since that time, the instruments have been held by numerous parties.

{¶ 4} In 2000, appellant defaulted on the loan. EMC Mortgage Corporation ("EMC"), the holder of the note at that time, commenced a foreclosure action (case No. 00CI351) and alleged that appellant was in default of payment and that the mortgage covenants had become absolute. EMC requested a $125,568.45 judgment against appellant plus interest as well as a determination that it had the first and best lien on the premises and that the lien be foreclosed and the property sold at a sheriff's sale with the proceeds to satisfy that lien.

{¶ 5} On January 25, 2001, appellant filed a Chapter 7 bankruptcy in federal court and triggered the Section 362(a), Title 11, U.S.Code automatic-stay provisions. The United States Bankruptcy Court later vacated the stay and allowed EMC to proceed with the foreclosure action. On November 7, 2001, EMC filed a summary judgment motion and contended that no question existed that the note was in default and that it was entitled to foreclosure of the mortgage.[2]

{¶ 6} On January 29, 2002, the trial court granted judgment for EMC and ordered foreclosure of the mortgage and sale of the property. Appellant then filed a pro se "motion for summary judgment" on March 12, 2002. Appellant argued, inter alia, that the trial court's summary judgment was erroneous because he had been discharged in bankruptcy and a personal judgment could not be entered against him. The trial court vacated its previous judgment and order of sale until the situation could be sorted out.

{¶ 7} In the spring of 2002, appellant retained counsel, who entered an appearance in case No. 00CI351 and commenced a new action (case No. 02CI154) against Title First Agency, Inc. ("Title First"), defendant below and appellee herein, and EMC.[3] He alleged that (1) the loan with United was intended to finance the construction of an addition to his home, (2) he entered into an escrow agreement whereby Title First deposited funds on his behalf in an escrow account, (3) he used loan proceeds from that account for several months to finance the construction, (4) on May 17, 1999, Title First paid in excess of $16,000

---

2. Although appellant filed several pro se memoranda opposing foreclosure, he did not officially answer the complaint's allegations, nor did he oppose the summary judgment motion.

3. Title First is the company that closed the original loan between appellant and United in 1999.

to a payee who had no connection to any of the parties or to the construction project, (5) appellant did not receive that money, (6) without that money, he could not pay to complete the construction and the house was left in such a state that it suffered damage, and (7) he was so concerned about being defrauded that he stopped making payments on his mortgage. Based on these allegations, appellant asserted no fewer than nine counts against Title First and EMC and sought $1,000,000 in compensatory damages and $1,000,000 in punitive damages from each defendant. Title First and EMC both denied liability and asserted a variety of defenses. Subsequently, the trial court consolidated the two cases for review and disposition.

{¶ 8} On June 27, 2002, appellant filed a memorandum opposing EMC's original motion for summary judgment and argued that no genuine issues of material fact existed as to whether EMC was the holder of the note and whether it had standing to bring an action for default. Given these questions, as well as appellant's concerns expressed in his pro se pleadings as to the amount due on the note, the trial court overruled EMC's motion.

{¶ 9} On August 8, 2003, Title First requested summary judgment on appellant's claims. In particular, Title First argued that appellant's action was barred by res judicata because if he had a claim for wrongful disbursement of money in the escrow account, he should have pursued that claim in the bankruptcy case. Thus, because appellant did not pursue a claim, and was ultimately discharged, Title First argued that his claims were barred by the doctrine of res judicata. Appellant, however, argued that Title First could not invoke res judicata because it was neither a party to his bankruptcy nor in privity with anyone who was a party.

{¶ 10} On January 2, 2004, MERS[4] requested summary judgment and contended that whatever claim appellant may have had against Title First for the wrongful disbursement of the loan proceeds, that claim had nothing to do with his mortgagee, who had complied with its duties under the terms of the mortgage. Moreover, MERS argued that it did not violate federal bankruptcy law by pursuing foreclosure because the only remedy it sought was recovery on its security interest and not a deficiency judgment. Finally, MERS relied on David Johnson's affidavit that appellant was in default on the mortgage and that the balance due was in excess of $127,000.[5]

---

4. On December 24, 2003, Mortgage Electronic Registrations Systems as nominee for Ingomar, L.P. ("MERS"), defendant below and appellee herein, was substituted as party plaintiff for EMC because it had acquired the note and mortgage by assignment.

5. Johnson further attested that the allegedly misapplied loan proceeds, of which appellant claims he was defrauded, were actually applied to the principal balance on the loan and reduced his indebtedness from $144,753.05 to $127,912.51.

{¶ 11} On January 8, 2004, the trial court announced that it would stay any decision on summary judgment until the parties briefed a federal bankruptcy issue that had arisen during the court's own research. Specifically, the court was concerned that appellant's claims in case No. 02CI154 became part of his bankruptcy estate once he filed Chapter 7 and could either be abandoned or pursued by the estate but did not revert to him after discharge so that he could pursue them in a court of law. The court directed the parties to brief whether appellant had listed these million-dollar claims as assets and, if not, whether they could now be pursued after his discharge.

{¶ 12} Title First filed its brief on January 22, 2004, and argued that any claims appellant had for wrongful disbursement of the loan proceeds belonged to the bankruptcy estate and only the trustee had standing to assert them. Title First also pointed out that appellant had not listed those claims on his schedule of assets filed in the bankruptcy court and thus could not argue that the trustee had knowingly abandoned them for him to pursue. The next day, appellant filed his brief and argued that the bankruptcy trustee had abandoned the assets (claims) or at least declined to pursue them.[6] Thus, he argued, the claims had been abandoned, and he was free to pursue them in court.

{¶ 13} On January 28, 2004, the trial court granted Title First summary judgment and held that any claims appellant had against Title First were assets of the bankruptcy estate and could be pursued only by the trustee unless they had been abandoned. Although appellant submitted an affidavit from his attorney stating that they were abandoned, the court did not find it persuasive because the affidavit (and letters incorporated therein) addressed only the alleged wrongful disbursement of loan proceeds that gave rise to his alleged claims. The trial court noted that the evidence did not address the actual multimillion-dollar claims themselves. Thus, the court entered judgment in favor of Title First on the claims in case No. 02CI154.

{¶ 14} On August 30, 2004, the trial court likewise granted summary judgment to MERS in case No. 00CI351. The court held (1) that appellant was in default of his loan and that MERS was entitled to foreclose its security interest, (2) that MERS did not violate bankruptcy law as to appellant's discharge because it sought only to foreclose on the mortgage rather than to collect on any deficiency judgment, and (3) that MERS did not violate the Real Estate Settlement

---

6. Appellant's argument relied on an affidavit by James A. Wallace, his bankruptcy attorney, who attested that the disputed $16,000 disbursement was mentioned to the bankruptcy trustee, but because the amount of the mortgage debt so exceeded the value of the property, the trustee did not think it worthwhile to pursue. Further, the affidavit incorporated a letter indicating that the trustee did not propose to take any further action on the matter.

Procedures Act ("RESPA"), Section 2605, Title 12, U.S. Code, by failing to notify appellant that his note and mortgage had been assigned.

{¶ 15} Pursuant to that decision, on September 29, 2004, the trial court issued a judgment of foreclosure and held that MERS had the first and best lien on the premises, that appellant was in default of his obligations under the loan, and that the mortgage covenants had become absolute. The court directed the property be sold at a sheriff's sale and the proceeds be applied to reduce the amount of the loan. This appeal followed.

I

{¶ 16} Before we address the merits of the assignment of error, we first address some jurisdictional and procedural issues. To begin, courts of appeals in this state have jurisdiction to review the final orders of inferior courts within their district. Section 3(B)(2), Article IV of the Ohio Constitution; R.C. 2501.02. A final, appealable order is, inter alia, one that affects a substantial right and either determines the action or is entered in a special proceeding. R.C. 2505.02(B)(1) and (2).

{¶ 17} Further, whenever multiple claims or multiple parties appear in an action, Civ.R. 54(B) also must be considered. *In re Berman* (1990), 69 Ohio App.3d 324, 328, 590 N.E.2d 809; see, also, *Karr v. JLH of Athens, Inc.* (Dec. 4, 2000), Athens App. No. 99CA57, 2000 WL 33226179; *Gallucci v. Freshour* (June 22, 2000), Hocking App. No. 99CA22, 2000 WL 864977; *Byers v. Coppel* (Nov. 29, 1999), Ross App. No. 99CA2488, 1999 WL 1125060. Civ.R. 54(B) states that a trial court may enter final judgment as to "one or more but fewer than all of the claims * * * only upon an express determination that there is no just reason for delay." When applicable, the requirements of this rule must be met in order for a judgment to be deemed final and appealable. *State ex rel. Wright v. Ohio Adult Parole Auth.* (1996), 75 Ohio St.3d 82, 85, 661 N.E.2d 728; *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, syllabus. If a judgment is not final and appealable, then an appellate court has no jurisdiction to review the matter, and it must be dismissed. *Prod. Credit Assn. v. Hedges* (1993), 87 Ohio App.3d 207, 210, 621 N.E.2d 1360, at fn. 2; *Kouns v. Pemberton* (1992), 84 Ohio App.3d 499, 501, 617 N.E.2d 701.

{¶ 18} It does not appear that any formal resolution occurred regarding appellant's claims from case No. 02CI154 against EMC, and we find no Civ.R. 54(B) finding of "no just reason for delay" in the trial court's summary judgment. We find no jurisdictional deficiency, however, as the trial court found that appellant's claims against Title First in case No. 02CI154 could not be maintained because they had belonged to his bankruptcy estate. While the same finding was

**20**

not formally made as to EMC, the clear implication is that claims against it, too, could not be maintained and have been rendered moot. See *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44 Ohio St.3d 17, 21, 540 N.E.2d 266; *Wise v. Gursky* (1981), 66 Ohio St.2d 241, 20 O.O.3d 233, 421 N.E.2d 150, syllabus.

{¶ 19} Next, although not directly challenging our jurisdiction in this matter, Title First argues at the outset of its brief that we should dismiss this case because a number of procedural defects appear in appellant's notice of appeal. The first alleged defect is that appellant failed to include a Loc.R. 1 certification that the judgment being appealed is "final under both R.C. 2505.02 and Civ.R. 54(B)." While we agree that this is a defect, this defect could have been brought to our attention earlier. We do not believe that dismissal at this late juncture, particularly when the judgment is, in fact, a final order under R.C. 2505.02 and Civ.R. 54(B) and no prejudice has occurred to either side, is appropriate.

{¶ 20} Title First also objects that the notice of appeal does not specifically mention "Title First" other than in the style of the case. We are somewhat perplexed by this objection, as nothing in either Loc.R. 1 or App.R. 3(D) requires the name of the appellee to be mentioned (outside the style of the case). App.R. 3(D) and Loc.R. 1 require that the name of the "party or parties taking the appeal" be specified.

{¶ 21} Finally, Title First objects that appellant's notice of appeal specifies that the only judgment being appealed is the foreclosure decree of September 29, 2004, when, in fact, he is actually appealing the January 28, 2004, summary judgment on his claims in case No. 02CI154. The flaw in this argument, however, is that appellant could appeal only a final order. The January 28, 2004 summary judgment was interlocutory and could not be appealed. The foreclosure decree, however, is a final order. See *Third Natl. Bank of Circleville v. Speakman* (1985), 18 Ohio St.3d 119, 120, 18 OBR 150, 480 N.E.2d 411; *Oberlin Sav. Bank Co. v. Fairchild* (1963), 175 Ohio St. 311, 312, 25 O.O.2d 181, 194 N.E.2d 580; *Queen City S. & L. Co. v. Foley* (1960), 170 Ohio St. 383, 11 O.O.2d 116, 165 N.E.2d 633, at paragraph one of the syllabus. Once a final judgment was entered, all interlocutory rulings merged into that judgment and became appealable at that time. *Horner v. Toledo Hosp.* (1993), 94 Ohio App.3d 282, 289, 640 N.E.2d 857; *Safe Auto Ins. Co. v. Perry* (Jan. 25, 2001), Franklin App. No. 00AP–722, 2001 WL 58738; *Bard v. Soc. Natl. Bank* (Sep. 10, 1998), Franklin App. No. 97APE11–1497, 1998 WL 598092. In other words, although appellant is appealing the January 28, 2004 summary judgment, he could do so when the order became final and appealable in the September 29, 2004 foreclo-

sure decree. Thus, appellant adequately specified the correct judgment being appealed in his notice of appeal.

{¶ 22} One other procedural irregularity should be mentioned. Appellant advanced two assignments of error but has one argument for both in his brief. App.R. 16(A)(7) requires a separate argument for each assignment of error. A failure to make separate arguments for the assignments of error provides grounds to disregard them pursuant to App.R. 12(A)(2). Thus, we would be well within our discretionary authority to summarily overrule appellant's assignments of error and affirm the decision of the trial court. See *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 186, 619 N.E.2d 469; *State v. Caldwell* (1992), 79 Ohio App.3d 667, 677, 607 N.E.2d 1096, at fn. 3; *State v. Houseman* (1990), 70 Ohio App.3d 499, 507, 591 N.E.2d 405. Nevertheless, in the interests of justice we choose to review the appellant's assignments of error.

## II

{¶ 23} We now turn to the merits of appellant's argument. Appellant asserts that the trial court erred in granting summary judgment against him. Appellate courts review summary judgments de novo. *Broadnax v. Greene Credit Serv.* (1997), 118 Ohio App.3d 881, 887, 694 N.E.2d 167. In other words, appellate courts afford no deference to a trial court's summary judgment decision, *Hicks v. Leffler* (1997), 119 Ohio App.3d 424, 427, 695 N.E.2d 777, and conduct an independent review to determine whether summary judgment is appropriate. *Woods v. Dutta* (1997), 119 Ohio App.3d 228, 233–234, 695 N.E.2d 18.

{¶ 24} Summary judgment is appropriate when the movant can demonstrate, after the evidence is construed most strongly in the nonmovant's favor, that no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201. Parties moving for summary judgment bear the initial burden to show that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once that burden is met, the onus shifts to the nonmoving party to provide rebuttal evidentiary materials. *Trout v. Parker* (1991), 72 Ohio App.3d 720, 723, 595 N.E.2d 1015. With these principles in mind, we turn to the summary judgment issues in the case at bar.

## III

{¶ 25} Appellant asserts in its assignment of error that the trial court erred in granting summary judgment against him in case No. 02CI154. The resolution of

this assignment of error requires us to apply federal bankruptcy law. Fortunately, little disagreement exists between the parties as to the state of that law. The parties disagree, however, over the law's application to the facts of this case.

{¶ 26} Upon the filing of a bankruptcy petition, all of a debtor's property becomes property of the estate. Section 541, Title 11, U.S. Code; *Folz v. BancOhio Natl. Bank* (S.D.Ohio 1987), 88 B.R. 149, 150. The term "property" in this statute is interpreted broadly and includes all interests of a debtor, both legal and equitable, and both tangible and intangible. Id.; see, also, *In re Jones* (C.A.7, 1985), 768 F.2d 923, 926. This includes any unliquidated legal claims against other parties. Further, those causes of action need not have been filed at the time of the bankruptcy in order to be considered a part of the bankruptcy estate. See, generally, *McLynas v. Karr*, Franklin App. No. 03AP–1075, 2004-Ohio-3597, 2004 WL 1516849, at ¶ 13–15; *McGlone v. Blaha* (Nov. 17, 2000), Ross App. No. 99CA2533, 2000 WL 1725423; *Barletta v. Tedeschi* (N.D.N.Y.1990), 121 B.R. 669, 671–672.

{¶ 27} Those claims remain part of the bankruptcy estate unless the trustee abandons them. *McGlone*, supra; *Mele v. First Colony Life Ins. Co.* (D.D.C.1991), 127 B.R. 82. As we noted in *McGlone*, the party asserting abandonment by the trustee carries the burden to prove that abandonment. See, also, *Barletta v. Tedeschi* (N.D.N.Y.1990), 121 B.R. 669, 672. In order to establish abandonment for summary judgment purposes, evidence must show that one of the following three events has occurred: (1) the trustee explicitly abandoned the claim after giving notice to the creditors of the proposed abandonment, (2) the federal bankruptcy court ordered abandonment after a party in interest requested abandonment of the claim and the creditors had been notified, or (3) the claim was properly scheduled under the bankruptcy code and was not otherwise administered at the time the case was closed. Section 554(a), (b), and (c), Title 11, U.S.Code; see, also, *McGlone*, supra; *In re Fossey* (D.Utah 1990), 119 B.R. 268, 271.

{¶ 28} The parties do not dispute this rendition of the law. The parties also agree that appellant's claims in case No. 02CI154 were part of his bankruptcy estate and could not be asserted by him in the trial court unless the trustee had abandoned them. Where the parties disagree is the question of abandonment. Appellant asserts that the bankruptcy trustee abandoned his claims. Title First maintains, however, and the trial court concluded, that the trustee did not abandon them. After a thorough review of the record in the case sub judice, we believe that the trial court correctly determined this issue, and we hereby adopt its reasoning.

{¶ 29} As we noted above, three ways exist under which appellant's claims could have been abandoned and removed from the bankruptcy estate. One is if the claim was properly listed on a schedule filed when the case was commenced, but was otherwise not administered at the time the case was terminated. That did not happen in the case sub judice. Appellant's bankruptcy attorney's affidavit expressly stated that this issue "was not listed as an asset on Mr. Mullins' bankruptcy since the amount due on the mortgage * * * greatly exceeded the value of the real estate."

{¶ 30} The second way the asset could have been abandoned is if the bankruptcy court ordered its abandonment. Because the claims were not listed as assets of the estate, that apparently did not occur.

{¶ 31} That leaves the first option under Section 554, Title 11, U.S. Code: the trustee expressly abandoned the claims after providing notice to creditors of the abandonment. This is the part of the statute on which appellant attempts to base his argument. He claims that he raised the issue with the trustee at a meeting of creditors but that the trustee did not believe that the dispute with the mortgage company was worth pursuing. Appellant relies in particular on the following attestations by his bankruptcy attorney:

5. I represented Mr. Mullins at the meeting of creditors held in his bankruptcy case on March 29, 2001. Mr. Mullins did attempt to explain to the case trustee, Frederick M. Luper, the discrepancy in the amount due ECM [sic] Mortgage Corporation. Mr. Luper did not appear at the time to consider this to be significant, and subsequently closed the estate without administration of assets.

\* \* \*

8. In his letter and motion, Mr. Mullins clearly indicates that he believed *he was due $16,840.54* from Title First Agency. In the letter to me from the attorney for the Trustee, the trustee declined to reopen the case or administer any assets.

(Emphasis added.)

{¶ 32} Appellant also cites a letter from the trustee's attorney, incorporated into his bankruptcy attorney's affidavit, to the effect that the trustee did "not intend to take any action to reopen this case or administer any assets." He argues that this evidence shows that the claims were abandoned by the bankruptcy trustee. We disagree.

{¶ 33} First, as the trial court cogently noted in its decision, these materials address only the issue of Title First's allegedly misapplied disbursement. They do not address the multimillion-dollar claims that appellant has advanced in the case sub judice. Another letter from the trustee's attorney, incorporated into the

bankruptcy attorney's affidavit, revealed that the value of the secured real estate was approximately $75,000 and the amount due on the mortgage exceeded $125,000. Because of that discrepancy, it is not difficult to imagine that the trustee did not think it worthwhile pursuing a claim worth $16,000. Even if that claim were proven true, there would still be no equity in the property and no assets for unsecured creditors. Had the trustee known that appellant claimed contract and tort actions against Title First and EMC that were worth millions of dollars, he might possibly have pursued those claims for the benefit of the unsecured creditors. Second, we do not accept appellant's argument that notice of a meeting of creditors in a dissolution case is tantamount to notice that the trustee is about to abandon assets allegedly worth millions of dollars.[7]

{¶ 34} For these reasons, we agree with the trial court's conclusion that appellant's claims in case No. 02CI154 were part of his bankruptcy estate and were not abandoned. Thus, he could not pursue them in the instant case, and the trial court correctly granted summary judgment in favor of Title First on this issue. Accordingly, we hereby overrule appellant's assignment of error.

{¶ 35} Having considered the error assigned and argued in appellant's brief, and having found no merit, we hereby affirm the trial court's judgment.

Judgment affirmed.

HARSHA and MCFARLAND, JJ., concur.

---

7. We are not even sure that the bankruptcy trustee could have abandoned these assets in the first place. Section 554(a), Title 11, U.S. Code, allows the trustee to abandon only property that is "burdensome to the estate" or that is of "inconsequential value and benefit to the estate." We fail to see how multimillion-dollar claims could be considered burdensome or of inconsequential value or benefit.