DECISION AND JUDGMENT ENTRY
{¶ 1} Patty Childers appeals the trial court's property division in this divorce action. She asserts that the court failed to classify a mobile home and the real estate upon which it sits as marital or separate property. While the trial court did not explicitly classify either the mobile home or real estate as marital or separate property, the court's decision contains sufficient detail to allow this court to conclude that the trial court found that (1) because Mr. Childers' parents own the mobile home, it is not property subject to division in a divorce action, and (2) because Mr. Childers' mother transferred the real estate to him during a period of separation from Ms. Childers, the real estate constitutes a gift of separate property. Thus, Ms. Childers' first assignment of error is without merit.
 {¶ 2} Ms. Childers' second and third assignments of error contend that the court failed to award her a share of the marital residence (the mobile home) or her separate property interest in the mobile home and that the court failed to award her a share of the real estate. Because Ms. Childers failed to provide a transcript, we cannot review the trial court's decision declining to award her a share of the property as either marital or separate property. Therefore, we overrule her second and third assignments of error.
 {¶ 3} Ms. Childers' fourth assignment of error does not challenge a specific ruling or judgment and thus, it is not a proper assignment of error. Consequently, we summarily overrule it and affirm the trial court's judgment.
 {¶ 4} On April 29, 2005, the trial court granted the parties a divorce. The court noted that the "main issue in this case involves the real estate and mobile home where Plaintiff and Defendant resided during the marriage and most of the testimony addressed that issue. The parties offered totally conflicting testimony regarding these issues and, therefore, the Court had to weigh the credibility of the testimony and evidence very carefully."
 {¶ 5} The court recounted the trial testimony as follows:
"Plaintiff and Defendant began living together in 1993. The parties were not married until 1998. Sometime during 1993 or 1994, Defendant was incarcerated in prison for a period of time. Defendant testified that he was incarcerated for fifty-seven days. Plaintiff testified that she thought Defendant was imprisoned between eight and eleven months.
Plaintiff testified that there were discussions regarding the purchase of a mobile home that took place with Defendant's parents, Galen and Betty Childers, while Defendant was incarcerated. Defendant testified that discussions regarding the mobile home were not made until after his release from prison.
It appears that neither Plaintiff nor Defendant had credit that would enable them to purchase a mobile home on their own. On March 7, 1995, a new Clayton/Southern Pine mobile home was purchased by Defendant's parents.
The purchase agreement and title are in the name of Defendant's parents as is the mortgage to Greenpointe Credit. The mobile home was placed on real estate owned by Defendant's parents adjacent to their home.
Betty Childers testified that she and her husband bought the mobile home because they wanted to get a place for Plaintiff and Defendant to live and that's why they went in debt to purchase the mobile home for them. The mobile home remains titled in Betty Childers' name. She transferred the real estate upon which the mobile home was situated to her son, the Defendant, on February 12, 2001, during a period of time when Plaintiff and Defendant were separated.
Plaintiff testified the there was an oral agreement between [her], her husband and his parents that his parents would purchase the mobile home in their names; that Plaintiff and Defendant would make the payments on the mortgage; and, the title to the mobile home would be transferred to Plaintiff and Defendant once the mortgage was paid in full.
Plaintiff, also, testified that there was no agreement regarding the transfer of real estate to Plaintiff and Defendant when the mobile home was purchased but, at a later date, there was an agreement that the real estate would be conveyed to Plaintiff and Defendant.
Plaintiff testified she gave the down payment for the mobile home to Defendant's parents in the sum of [$1,500]. She said she borrowed [$1,000] from her mother and had saved [$500] from her social security. Plaintiff's sister, Peggy Mounts, testified she was present when Plaintiff got the [$1,000] from her mom to use as a down payment.
Plaintiff's daughter, Jodie Conkel, testified that she was aware that Plaintiff's mom gave Plaintiff money for the down payment on the mobile home and that she was present and saw Plaintiff give the money to Defendant's father.
Defendant's mom, Betty Childers, testified that the down payment from the mobile home came from her bank account and denies that Plaintiff or Defendant gave her money for the down payment. Defendant's mom testified that she would have signed the mobile home to Plaintiff and Defendant when it is paid for if they had stayed together but she denies that she discussed this with them in advance.
Neither Plaintiff nor Defendant offered any exhibits tracing the source of the down payment that was made on the mobile home nor did Plaintiff offer any writings regarding the agreement she alleges involving the mobile home or the real estate.
Plaintiff offered numerous receipts she stated were signed by Defendant's mom or dad to establish the payments she made on the mobile home. One of the receipts states `payment on trailer' but all of the other receipts state `rent.' Defendant's mom denied it was her signature on many of the receipts. Plaintiff testified that Betty Childers had Plaintiff write out the receipts for her on many occasions. Mrs. Childers denied she ever had Plaintiff write out a receipt. Defendant's mother acknowledged that Plaintiff and Defendant made monthly payments to her except maybe at Christmastime and for three or four months in 2001, when the Plaintiff and Defendant had separated. Defendant's mother, also, testified that she didn't always write a receipt each month but only when Plaintiff needed a receipt to present to the Welfare Department.
Defendant testified that there was no agreement or discussion about them getting the mobile home and real estate from his parents. Defendant, also, testified that Plaintiff did not give money to his parents for the down payment.
Plaintiff is asking that the Court award her some of the money she paid for mobile home payments and improvements to the mobile home. When Plaintiff was asked at the hearing on November 4, 2004, and, also, on March 9, 2005, what amount she felt was owed, she could not state an amount she felt was due her.
Plaintiff has failed to prove by a preponderance of the evidence that she paid to Defendant's parents the down payment for the mobile home and has, also, failed to prove by a preponderance of the evidence that there was an agreement that the mobile home would be transferred to Plaintiff and Defendant upon payment of the mortgage.
If any money was paid by Plaintiff to Defendant's parents for the down payment it was paid three and a half years prior to the marriage of the parties. Further, the mobile home mortgage is not paid in full, the parties are divorcing, and Defendant's parents are not parties to this divorce action."
 {¶ 6} The court did not make an explicit order regarding the mobile home or real estate and did not explicitly classify either one as marital or separate property.
 {¶ 7} Ms. Childers timely appealed the court's judgment and raises the following assignments of error:
 {¶ 8} THE TRIAL COURT FAILED TO DETERMINE THE PROPERTY INTERESTS IN THE MARITAL RESIDENCE. THE TRIAL COURT DID NOT CLASSIFY EITHER THE MOBILE HOME OR THE ONE PARCEL OF REAL ESTATE, AS MARITAL PROPERTY OR SEPARATE PROPERTY.
 {¶ 9} THE TRIAL COURT FAILED TO MAKE ANY DISTRIBUTION TO APPELLANT OF HER SEPARATE PROPERTY INTEREST IN THE MOBILE HOME OR THE ONE PARCEL OF REAL ESTATE.
 {¶ 10} THE TRIAL COURT FAILED TO MAKE ANY DIVISION OF THE MARITAL PROPERTY INTEREST IN THE MOBILE HOME AND ONE PARCEL OF REAL ESTATE.
 {¶ 11} THE RECORD ON APPEAL IS SUFFICIENT TO FULLY DETERMINE THE ASSERTED ERRORS.
 I {¶ 12} Ms. Childers has raised four assignments of error but has only one argument in her brief. App.R. 16(A)(7) requires a separate argument for each assignment of error. App.R. 12(A)(2) permits us to disregard any assignment of error that an appellant fails to separately argue. We would be well within our discretionary authority to summarily overrule Ms. Childers' assignments of error and affirm the trial court's decision. See, e.g., Mortgage Electronic Registrations Sys. v. Mullins,161 Ohio App.3d 12, 2005-Ohio-2303, 829 N.E.2d 326. However, because we strive to decide appeals on their merits instead of on technicalities, we will review Ms. Childers' assignments of error.
 II {¶ 13} In her first assignment of error, Ms. Childers argues that the trial court failed to classify the mobile home and real estate as marital or separate property. Appellee contends that the court implicitly found the mobile home to be non-marital property because the court found that appellee's parents own the mobile home. He further asserts that the court implicitly found the real estate to constitute his separate property.
 {¶ 14} Under R.C. 3105.171(B), a court is under a mandatory duty to classify property in a divorce proceeding as either marital or separate before dividing the property. See Knight v.Knight (Apr. 12, 2000), Washington App. No. 99CA27; Wright v.Wright (Nov. 10, 1994), Hocking App. No. 94CA02. A court must comply with its duty by making findings in sufficient detail to allow for meaningful appellate review of its decision. SeeKaechele v. Kachele (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus.
 {¶ 15} In the case at bar, the trial court did not explicitly state whether the mobile home or real estate constituted separate or marital property. However, it entered findings in sufficient detail to allow this court to ascertain the basis of its decision and to allow for meaningful appellate review.
 {¶ 16} Implicitly, the court determined that the mobile home was neither separate nor marital property. It found that the home was titled in Mr. Childers parents' names. Thus, because neither Ms. Childers nor Mr. Childers owned the mobile home, it was not a marital asset to be divided among the parties nor separate property to be awarded to either party.[1] The court's decision preserves the status quo — the mobile home, being titled in Mr. Childers' parents' names, is neither marital nor separate property subject to division in a divorce action.
 {¶ 17} From reviewing the totality of the court's decision, we discern that the court implicitly found that the real estate constitutes Mr. Childers' separate property. The court found that his mother transferred the real estate to him in February of 2001, during a period of separation from Ms. Childers. We believe this is essentially a finding that Mr. Childers' mother gifted the real estate to him individually and that the real estate constitutes Mr. Childers' separate property.
 {¶ 18} Thus, although the court did not explicitly classify either the mobile home and real estate as marital or separate property, its decision contains sufficient detail to allow us to discern the basis for its decision. While the trial court's divorce decree is far from ideal, it implicitly disposes of the disputed property: because Mr. Childers' parents own the mobile home, it is neither marital nor separate property subject to division in a divorce action; and because Mr. Childers' mother gifted the real estate to him during a period of separation from his wife, the property is his separate property. Therefore, Ms. Childers' argument the trial court erred by failing to classify the mobile home and real estate as marital or separate property is without merit, and we overrule her first assignment of error.
 III {¶ 19} Ms. Childers' second and third assignments of error assert that the trial court erred by failing to award her an interest in the mobile home and real estate, either as marital or separate property.
 {¶ 20} A trial court's classification of property as marital or separate is a factual finding that we review under a manifest weight of the evidence standard. Barkley v. Barkley (1997),119 Ohio App.3d 155, 159, 694 N.E.2d 989. We will not reverse the court's decision as long as some competent, credible evidence supports it. Sec. Pacific Natl. Bank v. Roulette (1986),24 Ohio St.3d 17, 20, 492 N.E.2d 438. "This standard of review is highly deferential and even `some' evidence is sufficient to sustain the judgment and prevent a reversal. We are guided by the presumption that the trial court's factual findings are correct since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony. In re Jane Doe I (1991), 57 Ohio St.3d 135, 138,566 N.E.2d 1181." Eddy v. Eddy, Washington App. No. 01CA20, 2002-Ohio-4345, at ¶ 27.
 {¶ 21} When an appellant challenges a trial court's factual findings, the appellant bears the burden of providing a transcript. See, e.g., Rose Chevrolet, Inc. v. Adams (1988),36 Ohio St.3d 17, 19, 520 N.E.2d 564; see, also, Mumma v. Cooper,
Washington App. No. 02CA11, 2003-Ohio-2507; Cline v. ElectronicData Systems Corp. (Sept. 18, 2000), Washington App. No. 99CA14. In the absence of a transcript, we must presume regularity in the trial court proceedings. See Hartt v. Munobe (1993),67 Ohio St.3d 3, 7, 615 N.E.2d 617; Knapp v. Edwards Laboratories
(1980), 61 Ohio St.3d 197, 199, 400 N.E.2d 384.
 {¶ 22} In Mumma, the appellant failed to provide a transcript when challenging the trial court's classification of property as marital or separate. We determined that we could not rule on the appellant's assigned errors without the transcript and that his failure to provide the transcript was "fatal to his appeal because we must presume the trial court acted properly in characterizing and distributing the property." Mumma at ¶ 5.
 {¶ 23} Ms. Childers' second and third assignments of error essentially challenge the court's factual findings regarding the nature of the property as marital or separate. Without a transcript, we are unable to review her second and third assignments of error and must presume that the court's decision declining to award her any marital or separate interest in the mobile home or real estate was correct. For the foregoing reasons, we overrule Ms. Childers' second and third assignments of error.
 IV {¶ 24} Ms. Childers' fourth assignment of error is not a proper assignment of error. "`Assignments of Error' constitute specific rulings that the appellant challenges. See North CoastCookies, Inc. v. Sweet Temptations, Inc. (1984),16 Ohio App.3d 342, 343, 476 N.E.2d 388. Specific assignments of error `may dispute the final judgment itself or other procedural events in the trial court.' Id." State v. Volgares (May 17, 1999), Lawrence App. No. 98 CA 1. Ms. Childers' fourth assignment of error does not assert error in the trial court or challenge any of the court's rulings. Thus, we summarily overrule her fourth assignment of error and affirm the court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, J. and Kline, J.: Concur in Judgment and Opinion.
[1] R.C. 3105.171(B) gives the court "jurisdiction over all property in which one or both spouses have an interest."