OPINION
{¶ 1} Plaintiffs-appellants, John and Dolores Wolfram, appeal a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Steve Wittman and his company, Steve Wittman Construction, Inc.[1]
Wittman and his company are the developer of a condominium complex known as Deerfield Village and will be referred to as the developer. The Wolframs own a condominium unit within Deerfield Village.
 {¶ 2} When finished, Deerfield Village will consist of 93 condominium units. All unit owners are members of the Deerfield Village Property Owners Association ("DVPOA"), a non-profit corporation created in accordance with R.C. Chapter 1702. In 1996, DVPOA, the developer, and the city of Hamilton entered into a Master Agreement and Declaration of Covenants, Conditions and Restrictions and Reservation of Easements (the "Master Agreement"). According to the developer's affidavit, Deerfield Village is subject in its entirety to the Master Agreement.
 {¶ 3} The unit owners in Deerfield Village are in turn divided into three sub-associations, the Deerfield Village Condominium Owners Association, Inc. (the "Association") and two other sub-associations that are not relevant to this appeal. The Association consists of 36 condominium unit owners. According to the developer's affidavit, DVPOA, the Association, and the other two sub-associations "are all part of one integrated development, and share roadways for ingress and egress, drainage and retention systems, water systems and other utilities. All three [sub]-associations constitute one integrated development and are subject not only to their individual declarations,[2] but also to the Master Agreement."
 {¶ 4} In 2004, the Association brought suit against the developer for damages and injunctive relief. The Association claimed that the developer committed trespass by unlawfully using the Association's common area water lines and water meter to service three adjacent landominiums of the developer. The Association alleged that this use was in violation of the Association's Declaration and asked the trial court to order the developer to place the water lines servicing the landominiums on separate meters and to stop entering the Association property. The Association moved for summary judgment but withdrew the motion in May 2005. In June 2005, the Wolframs filed a motion to intervene as a party plaintiff, which the trial court granted.
 {¶ 5} The Wolframs moved for summary judgment to determine the ownership and control of water lines located in the common area of the Association property and unlawfully used by the developer to service his three landominiums. The landominiums are part of DVPOA. The water lines are not addressed in the Master Agreement. The Wolframs claimed that the water lines were common areas both under the Association's Declaration and R.C.5311.01(F), and that the developer's use of these water lines resulted in an alteration of the Wolframs' interest in the common areas in violation of R.C. 5311.04(E).
 {¶ 6} The developer, in turn, argued that his use of the water lines was specifically authorized under R.C. 5311.081(B) and the First Amendment to the Master Agreement (the "Amendment"). The Amendment was adopted in August 2005 by the DVPOA Board of Trustees and approved by 62 unit owners of the DVPOA (out of a current total of 73 unit owners). The Wolframs replied that the Amendment was subject to R.C. 5311.04(E) and that because it was not unanimously approved by all unit owners affected, it was invalid.
 {¶ 7} On November 10, 2005, the trial court granted in part and denied in part the Wolframs' motion for summary judgment. The trial court found that (1) the Amendment was valid, (2) although the developer did not trespass onto either the Wolframs' property or the Association property, he used the water without authorization, and (3) the trespass complaint was mooted by the Amendment. The court awarded summary judgment to the Wolframs "for such damages * * * as may be proved by them for water used during the period of the unauthorized use."
 {¶ 8} A month before the foregoing trial court's entry, the Wolframs filed a separate complaint against the Association asking the court to declare that the Amendment was invalid. In January 2006, finding that similar issues of law and fact were involved, the trial court consolidated both cases. The developer moved for summary judgment on the ground that the validity of the Amendment had already been decided by the trial court. On March 31, 2006, citing its November 2005 entry, the trial court granted summary judgment in favor of the developer. The Wolframs appeal the trial court's March 31, 2006 entry, raising two assignments of error.
 {¶ 9} Before we consider the assignments of error, we address the developer's argument that because the Wolframs only appealed the March 31, 2006 entry and never appealed the November 10, 2005 entry, this appeal should be dismissed on res judicata grounds.
 {¶ 10} It is well-established that a trial court's order granting summary judgment upon the whole case as to fewer than all the claims is a final appealable order only upon an express determination that "there is no just reason for delay" until judgment is granted as to all the claims. See Brown v.Performance Auto Ctr., Inc. (May 19, 1997), Butler App. No. CA96-10-205. Summary judgment on the issue of liability by itself, without resolving the question of damages, is interlocutory in character and neither final nor appealable.Abbe Family Found. Trust v. Portage Cty. Sheriff's Dept.,
Portage App. No. 2005-P-0060, 2006-Ohio-2497, ¶ 36.
 {¶ 11} In the case at bar, while the November 10, 2005 entry disposed of any issue of liability, the issue of damages owed to the Wolframs still remained to be resolved. In addition, while it granted in part and denied in part the Wolframs' motion for summary judgment, it did not state that there was no just reason for delay. It thus follows that the entry was not a final appealable order but rather an interlocutory entry. See Brown.
By contrast, the March 21, 2006 entry was a final appealable order. Once a final judgment is entered, interlocutory rulings merge into that judgment and become appealable at that time. SeeMtge. Electronic Registrations Sys. v. Mullins,161 Ohio App.3d 12, 2005-Ohio-2303; Shaffer v. OhioHealth Corp., Franklin App. No. 04AP-236, 2004-Ohio-6523.
 {¶ 12} The trial court's November 10, 2005 entry was incorporated into the court's March 31, 2006 entry. By appealing the latter entry, the Wolframs have appealed the November 10, 2005 entry and the merits of the appeal are properly before us.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "THE TRIAL COURT ERRORED [SIC] IN HOLDING THE FIRST AMENDMENT TO THE MASTER AGREEMENT VALID AND ENFORCEABLE."
 {¶ 15} The Wolframs argue that the Amendment was subject to R.C. 5311.04(E) which requires an amendment to a declaration to be unanimously approved by all unit owners affected. The Wolframs assert that because the Amendment was only approved by 62 out of 73 unit owners, it was not valid. The trial court found that because the Master Agreement was not a declaration under R.C. Chapter 5311, the Agreement and its Amendment were not subject to R.C. 5311.04(E), and thus, the Amendment did not need to be unanimously approved by the unit owners.
 {¶ 16} An appellate court's review of a summary judgment decision is de novo. Derr, Clermont App. No. CA2003-06-049,2004-Ohio-1930, ¶ 7. Under Civ.R. 56(C), summary judgment is properly granted if (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to one but conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Id. The nonmoving party may not rest upon the allegations or denials in the pleadings, but must affirmatively demonstrate the existence of a genuine issue of material fact to prevent the granting of summary judgment. Id.
 {¶ 17} As the trial court found, under the Master Agreement as it existed before the Amendment, the developer retained certain rights to travel over the Association property for the purpose of maintaining, repairing, or replacing sewer and drainage facilities. The developer did not retain the right to travel over or use the Association property water lines or water to irrigate the common areas of Deerfield Village. The Amendment created a board of trustees composed of three persons: a unit owner from the Association and a unit owner from each of the other two sub-associations. The new board has the authority to manage and maintain the lawn, sprinkler system, and other facilities of Deerfield Village. It also has the authority to assess and collect funds from all of the Deerfield Village unit owners for the purpose of managing and maintaining the lawn, sprinkler system, and other facilities.
 {¶ 18} R.C. Chapter 5311 governs condominium property. R.C.5311.04(E) provides in relevant part that "the undivided interest in the common elements of each unit as expressed in the original declaration shall not be altered except by an amendment to the declaration unanimously approved by all unit owners affected." "[R.C. Chapter 5311] applies only to property that is specifically submitted to its provisions by the execution and filing for record of a declaration by the owner as provided in this chapter." R.C. 5311.02. Under R.C. 5311.01(R), a declaration "means the instrument by which property is submitted to the provisions of this chapter. `Declaration' includes all amendments to that declaration." R.C. 5311.05(B) requires a declaration to contain ten specific items.
 {¶ 19} R.C. 5311.04(E) clearly applies to condominium declarations. Upon reviewing the definition of a declaration and what it must contain under R.C. Chapter 5311, we agree with the trial court that the Master Agreement and its Amendment are not a declaration of condominium as defined under R.C. Chapter 5311. Rather, the Master Agreement is a contract between the developer, the city of Hamilton, and DVPOA, that is, a contract between a condominium association and third parties. As a result, the Amendment is not subject to R.C. 5311.04(E).
 {¶ 20} As the trial court found, the Association's Declaration (which by contrast is a declaration under R.C. Chapter 5311) explains the contractual relationship between the Association property and Deerfield Village by virtue of the Master Agreement:
 {¶ 21} "The [Association property] is part of Deerfield Village[.] The [Association property] is benefited and burdened by certain retention, detention and storm sewer easements and facilities, which benefit Deerfield Village and which are more fully described in that certain Master Agreement * * *. As set forth in the [Master] Agreement, the Deerfield Village Property Owners Association ["DVPOA"] * * * was created to maintain and insure the retention, detention and storm drainage easements and facilities. Each purchaser of a Unit within Deerfield Village shall, upon acquisition of an ownership interest in such Unit, automatically become a member of the Association. A Unit Owner is obligated to pay his proportionate share of the expenses incurred by the [DVPOA]." Article VIII, paragraph A of the Declaration.
 {¶ 22} As the developer's affidavit stated, the Association is subject not only to its Declaration, but also to the Master Agreement. Section 6.3 of the Master Agreement provides that the Agreement "may be amended by an instrument signed by not less than fifty (50%) percent of the Lot owners." The Amendment was signed by 62 out of a current total of 73 unit owners. The Amendment is therefore valid and enforceable. The Wolframs' first assignment of error is overruled.
 {¶ 23} Assignment of Error No. 2:
 {¶ 24} "THE TRIAL COURT ERRORED [SIC] IN FAILING TO HOLD THAT THE SPRINKLER/WATER LINES ARE COMMON ELEMENTS PURSUANT TO [R.C. 5311.01(F)(2)."
 {¶ 25} The Wolframs argue that the trial court failed to hold that the water lines were common elements, and that such failure results in the developer retaining an ownership interest in the water lines in violation of R.C. 5311.04(A).[3]
 {¶ 26} Contrary to the Wolframs' argument, the trial courtdid find that the water lines were common elements of the Association property in its November 10, 2005 entry but rejected the argument that the Amendment altered the Wolframs' or other unit owners' undivided interest in the common elements of the Association property:
 {¶ 27} "[T]he court does not believe that the change in the Master Agreement evidenced by the First Amendment creates an alteration in the undivided interest in the common elements of each Unit such as to trigger the provisions of R.C. 5311.04(E). The water lines, which are `common elements' of the [Association property], have not been altered by the First Amendment. Instead, the contract allowing [the developer] to service the common elements and to assess Lot owners for their use has been altered. The [Association property] water lines are the same, even if the water passing through them will be diverted to uses that serve both the [Association property] and other property in [Deerfield Village]. This diversion was properly approved by the majority of lot owners of [Deerfield Village] under the properly amended Master Agreement."
 {¶ 28} We agree with the trial court. Under the plain language of the Amendment, the DVPOA board of trustees has now the authority to manage and maintain the sprinkler system and other facilities. It further provides that the "owners hereby grant to the Board such easements as are reasonably necessary to perform this function. The Board shall also have the authority to assess and collect funds from the Lot owners for purposes of managing and maintaining the lawn, sprinkler system, and other facilities."
 {¶ 29} The Amendment does not change any unit owner's undivided interest in the common elements of Deerfield Village. Nor does it allow the developer to retain a property interest in the common elements. In addition, there has been no change to the Association's Declaration to diminish the Wolframs' undivided interest. The Wolframs' second assignment of error is accordingly overruled.
 {¶ 30} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.
[1] Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar.
[2] A Declaration is the instrument which submits the property to the application of R.C. Chapter 5311 and any amendments made to the instrument itself. It contains, among other things, a description of the property, the name of the property, and the purpose of the condominium property and any restrictions upon its use. See Derr v. Fairway 10 Village 5 Condominium Assn., Inc.,
Clermont App. No. CA2003-06-049, 2004-Ohio-1930.
[3] R.C. 5311.04(A) provides in part that the "common elements of a condominium property are owned by the unit owners as tenants in common, and the ownership shall remain undivided."