DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from several Pike County Common Pleas Court summary judgments against Morris and Nancy Burkitt, plaintiffs below and appellants herein, on their claims against various parties and in favor of Pike Water, Inc. (Pike Water), defendant below, on its cross-claim and counterclaim.
 {¶ 2} Appellants assign the following error for review and determination:
"THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT."
 {¶ 3} Daisy and Elmer Smith owned and operated a farm in Sunfish Township. Elmer died in 1959 and his surviving spouse acquired his interest in the land. In 1967, Daisy conveyed 1.55 acres to her daughter and son-in-law, Nancy and Morris Burkitt (appellants). In 1977, she conveyed to them an additional 58 acres.
 {¶ 4} In March 1982, Daisy conveyed approximately 121 acres to her son, Howard Smith, and another daughter, Delores Jean Shepherd (appellee). The following month, Daisy conveyed 0.463 acres of that same property to Pike Water. A 1983 corrective deed to Pike Water listed Daisy, Delores and Howard as grantors.[1] Pike Water eventually constructed a water tower on that parcel.
 {¶ 5} In 1995, Howard quit-claimed his interest in the 121 acres to Delores. That same year, Delores carved out a 7 acre parcel and conveyed it to her son, Stephen Shepherd (appellee). Stephen and his wife, Deborah (appellee), later constructed a home on the land. To finance construction, they borrowed money from Union Federal Savings Bank (Union Bank) and granted Union Bank a mortgage to secure the debt.
 {¶ 6} Although the real estate transactions are somewhat complex and convoluted, the central dispute in this matter involves the boundary line's location between the two sisters' property. For the most part, everyone assumed that State Route 772 is the boundary with appellants' land south and appellees' land to the north. Gary McCann's (appellee) 1991 survey concluded that appellant's property lay entirely south of State Route 772.
 {¶ 7} In 2000, Delores came into a possession of a plat that indicated that 14 acres of her sister's and brother-in-law's property is located north of State Route 772. A portion of that 14 acres included the 7 acre tract where Stephen and Deborah built their home, and the half acre where Pike Water had constructed its tower. Terry Smith performed another survey for appellants and confirmed that 14 of the 58 acres that Daisy Smith conveyed to them in 1977 is located north of State Route 772.[2]
 {¶ 8} Appellants commenced the instant action to quiet title to the disputed 14 acres as against the Shepherds, Pike Water and Union Bank. They also alleged that McCann negligently performed his 1991 survey and requested $50,000 in compensatory damages. Appellants' amended complaint also added a new claim for breach of contract against McCann. The defendants denied liability, pleaded various affirmative defenses and set out their various claims to the property. The Shepherds also counterclaimed and alleged that the Burkitts placed a cloud on their title, slandered their title and caused the intentional infliction of emotional distress. They requested judgment to quiet title, $25,000 in compensatory damages and $25,000 in punitive damages. Pike Water counterclaimed and cross-claimed and asserted that it had an interest in easements, right-of-ways and the half acre it acquired from Daisy Smith and requested judgment to quiet title.
 {¶ 9} All parties filed motions for summary judgment. For our purposes, however, we need only focus on appellants' motion and the Shepherds' motion. Appellants argued that the Daisy Smith conveyances to them included 14 acres north of State Route 772. By contrast, the Shepherds argued that the parties had long treated State Route 772 as the border and the doctrines of acquiescence and estoppel by deed established the roadway as the boundary.
 {¶ 10} Apparently, the trial court agreed with appellees although it did not provide an explanation for its ruling. On June 18, 2003, the court entered judgment against appellants on their claims and in favor of the Shepherds on the first part of their counterclaim (quiet title). The court did not rule on the second part of the counterclaim for slander of title and intentional infliction of emotional distress. The Court further entered judgment for Union Bank, Gary McCann and Pike Water.
 {¶ 11} Appellants appealed those summary judgments and we dismissed the case for lack of jurisdiction because a portion of the Shepherds' counterclaim remained pending. See Burkitt v. Shepherd, Pike App. No. 03CA714, 2004-Ohio-1754, at ¶¶ 9-11. Subsequently, the trial court referred the matter to mediation, but no agreement ensued. Finally, on November 3, 2005, the Shepherds dismissed their remaining claims and thereby rendered the previous summary judgments final and appealable. This appeal followed.
 I {¶ 12} Before we turn to the merits of the assignment of error, we first set out the applicable standard of review. Appellate courts review summary judgments de novo. Broadnax v.Greene Credit Service (1997), 118 Ohio App.3d 881, 887,694 N.E.2d 167; Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107, 614 N.E.2d 765. In other words, we afford no deference to the trial court's decision, Hicks v. Leffler
(1997), 119 Ohio App.3d 424, 427, 695 N.E.2d 777; Morehead v.Conley (1991), 75 Ohio App.3d 409, 411-412, 599 N.E.2d 786, and conduct an independent review to determine the propriety of the summary judgment. Woods v. Dutta (1997), 119 Ohio App.3d 228,233-234, 695 N.E.2d 18; McGee v. Goodyear Atomic Corp. (1995),103 Ohio App.3d 236, 241, 659 N.E.2d 317.
 {¶ 13} Summary judgment under Civ.R. 56(C) is appropriate when a movant can establish that (1) no genuine issues of material fact exist, (2) the movant is entitled to judgment as a matter of law and (3) after the evidence construed most strongly in the nonmovants favor, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201; Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. The moving party bears the initial burden to show that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429,674 N.E.2d 1164; Dresher v. Burt (1996), 75 Ohio St.3d 280,293, 662 N.E.2d 264. Once that burden is satisfied, the onus shifts to the non-moving party to provide rebuttal evidentiary materials. See Trout v. Parker (1991), 72 Ohio App.3d 720, 723,595 N.E.2d 1015; Campco Distributors, Inc. v. Fries (1987),42 Ohio App.3d 200, 201, 537 N.E.2d 661. With these principles in mind, we turn our attention to the case sub judice.
 II {¶ 14} In their sole assignment of error appellant's assert that the trial court erred by granting appellees and Pike Water summary judgment.[3] We first address the summary judgment in favor of the Shepherds because the principles at issue are largely dispositive of the summary judgments in favor of the other parties.
 {¶ 15} The Shepherds argued that title to the 14 acres should be quieted in their favor because appellants, inter alia, acquiesced in treating State Route 772 as the boundary line. The trial court apparently agreed.[4] The doctrine of acquiescence is applied in instances when adjoining land owners occupy their respective properties up to a certain line and mutually recognize and treat that line as if it is the boundary that separates their properties. See Robinson v. Armstrong,
Guernsey App. No. 03CA12, 2004-Ohio-1463, at ¶ 35; McConachie v.Meeks (Sep. 21, 1999), Richland App. No. 98CA90; Turpen v. O'Dell (Oct. 14, 1998), Washington App. No. 97CA2300. Acquiescence rests on the practical reality that oftentimes, the true boundary line location is uncertain and neighbors may themselves establish boundaries. Richardson v. Winegardner
(Nov. 2, 1999), Allen App. No. 1-99-56. To apply this doctrine: (1) adjoining landowners must treat a specific line as the boundary; and (2) the line must be so treated for a period of years, usually the period required for adverse possession.Robinson, supra at ¶ 35; Matheson v. Morog (Feb. 2, 2001), Erie App. No. E-00-17; McGregor v. Hanson (Jun. 16, 2000), Geauga App. No. 99-G-2228.
 {¶ 16} No question exists that in the case at bar the second requirement has been satisfied. Appellants acquired their acreage from Daisy Smith in 1967 and 1977. More than twenty-one years elapsed before appellants claimed any land north of State Route 772. Furthermore, Daisy made several transfers, some as early as 1982, of the land north of the highway, and appellants did not object or claim that their mother (and mother-in-law) transferred their property. Thus, a sufficient period of time has elapsed to invoke the doctrine of acquiescence.
 {¶ 17} The central issue in this case is whether the evidence supports the view that the parties mutually recognized and treated State Route 772 as the boundary. After our review of the evidentiary materials, we agree with the trial court that no genuine issues of fact exist with respect to this point.
 {¶ 18} First, the undisputed history of the real estate transactions demonstrated that Daisy Smith divided the family farm and conveyed a portion to one daughter and a son-in-law, and a second portion to another daughter and son. Because it is unlikely that Daisy intended to convey the same property to two different people, we presume that she considered State Route 772 as the boundary. Moreover, subsequent transfers further demonstrate that the parties treated the roadway as the boundary. Daisy conveyed one half acre to Pike Water and, later, a corrective deed listed her, Delores and Howard Smith as grantors. They obviously believed that they owned the Pike Water property. Howard obviously believed that he owned the property he quitclaimed to his sister (Delores), and Delores obviously believed that she owned the land from which she carved out a seven acre parcel for her son, Stephen.
 {¶ 19} Nothing in the evidentiary materials shows that appellants objected to (1) the transfer of the land north of State Route 772 to Delores and Howard, (2) the quitclaim of Howard's interest to Delores, (3) the transfer of the 7 acre parcel to Stephen, or (4) the transfer of one half acre to Pike Water. Had appellants truly believed that they owned that land, they would have objected to these transactions. They did not.
 {¶ 20} We readily concede that appellants may not have been fully aware of the metes and bounds descriptions in the transfers. Appellants should, however, have been aware of any physical invasions to the land that they claim north of State Route 772. Here again, no evidence suggests that they objected to (1) Stephen and Deborah constructing a home on the 7 acre parcel or (2) Pike Water constructing a water tower on its half acre parcel. If appellants truly believed that these activities occurred on their property, they should have objected and asserted their rights.
 {¶ 21} Moreover, the evidentiary materials further substantiate that appellants did not know that they owned property north of State Route 772. Nancy Burkitt's deposition testimony concerning her nephew's desire to build a home on his 7 acre tract provides:
"Q. Did he talk about different home sites where he might put a home?
A. I only remember the one site he talked about.
Q. And that's the one that he eventually built on?
A. That's the only one I knew of.
Q. Did you raise any objection to the idea of him putting a home over there at that time?
A. No.
Q. And why not if you're now claiming that's your land?
A. At that time I didn't know it was my land.
Q. Now you claim it is your land; correct?
A. Correct.
 * * *
Q. So at no time would you have had any reason to express an objection to Steve Shepherd about building across the road, would you, in 1995?
A. That's correct, because we didn't know we had land overthere." (Emphasis added.)5
Similarly, Morris Burkitt's deposition testimony reveals that he performed the "bush hogging in the area" where his nephew and Deborah constructed their home.6 This suggests that like his wife, he was unaware that he owned property where Stephen intended to construct his home. This testimony, coupled with the parties' course of dealing over the years, is sufficient to carry the initial burden on summary judgment to establish that everyone acquiesced in State Route 772 as the boundary line. The burden then shifted to appellants to rebut that evidence.
 {¶ 22} The rebuttal evidentiary materials consisted of two Morris Burkitt affidavits. The first was included in their summary judgment motion and stated, inter alia, that `[p]rior to and following the 1991 survey . . . [he] maintained the land north of State Route 772 by mowing the pasture, bush hogging the area, maintaining fence line, as well as livestock that was included within the fourteen (14) acres north of State Route 772." We do not believe that this establishes that Burkitt and his wife regarded the land north of the roadway as their own. These acts may have been performed gratis for either his mother-in-law or sister-in-law. Further, nothing in the affidavit explicitly states that Burkitt considered that any land north of State Route 772 belonged to him and his wife.
 {¶ 23} The second affidavit is attached to a memorandum contra the Shepherd's summary judgment motion and states in pertinent part:
"Prior to 1977 and subsequent to 1977 I maintained the fence line both north and south of State Route 772.
The maintaining of the fence line north of State Route 772 was on my fourteen (14) acres of land which I believed was includedwithin the fifty-eight (58) acre Tract I conveyed to me by DaisySmith. * * *" (Emphasis added.)
 {¶ 24} Appellant's statement that he believed (past tense) that the 14 acres north of State Route 772 was included in the grant from his mother-in-law does indeed support the contention that he and his wife did not regard the highway as the boundary line between the two parcels. The problem, however, is that his affidavit contradicts his (and his wife's) deposition testimony. Generally, a party may not submit an affidavit that contradicts earlier deposition testimony, and thus create a genuine issue of material fact to defeat a summary judgment motion, unless he provides some explanation for that contradiction. See e.g. Fiskev. Rooney (1998), 126 Ohio App.3d 649, 661, 711 N.E.2d 239;Hill v. Thomson Electronics, Inc., Pickaway App. No. 05CA10,2005-Ohio-6332, at ¶ 13; White v. Turner (Jan. 9, 2002), Scioto App. No. 01CA2802. In the instant case, we find no explanation for this contradiction. Thus, we conclude that the second affidavit does not create a factual issue as to whether the parties believed that they owned land north of State Route 772. Thus, appellants did not carry their rebuttal burden and we find that the trial court properly granted summary judgment to quiet title in Shepherds' favor.
 {¶ 25} We further agree that, for the reasons outlined above, the trial court correctly granted summary judgment to the other appellees. Pike Water acquired its parcel in the early 1980s. No evidence indicates that appellants objected to either the 1982 Daisy Smith conveyance or the 1983 corrective deed from Daisy, Delores and Howard. Although it is unclear when Pike Water constructed the water tower, Pike Water General Manager Timothy Williams' affidavit stated that it was done "openly and in clear view." Appellants did not object and, thus, acquiesced both to Daisy retaining that half acre from her original conveyance to them and to the subsequent conveyance to Pike Water.
 {¶ 26} Likewise, as Union Bank is concerned, appellants did not object to Delores transferring 7 acres to her son. Union Bank Vice President Carrie Hoover's affidavit states the bank loaned Stephen $84,000 to construct the home. Stephen's affidavit attests that his aunt and uncle lived "in plain view" of the home construction, as well as various residential improvements, and did not once claim the property as their own. Only in 2000, after Stephen's home was constructed and improved, did appellants assert that they owned the property. By this point, however, appellant had acquiesced to State Route 772 as the northern boundary line.
 {¶ 27} The claims against surveyor Gary McCann are somewhat different, but we similarly conclude that the trial court correctly awarded him summary judgment. Appellants' first claim is negligence in performing the survey. This claim is governed by the R.C. 2304.09(D) four year statute of limitations and the "discovery rule" does not extend that time. See James v.Partin, Clermont App. No. CA2001-11-86, 2002-Ohio-2602, at ¶¶ 9-13; Bell v. Holden Survey, Inc. (Sep. 29, 2000), Carroll App. No. 729. It is undisputed McCann surveyed appellants' property in 1991 and that appellants did not bring their negligence action until 2001, well outside the statute of limitations.
 {¶ 28} Appellants also filed an amended complaint to assert a claim against McCann for breach of contract. We note, however, that appellants apparently contracted with McCann to perform a survey. By all accounts, McCann performed as agreed. Although the survey could have been negligently performed, the appropriate remedy for this activity sounds in negligence, not contract. Second, assuming arguendo that McCann breached the contract, appellants are only entitled to damages that compensate them for the breach. As McCann points out, appellants did not suffer damages from the alleged contract breach. Moreover, McCann's survey created a legal description for appellants' survivorship deed that conveyed the land to themselves. In other words, even if the deed omitted fourteen acres that Daisy Smith conveyed to them, they retained the acreage from that conveyance even though it was not included in the survivorship deed.
 {¶ 29} Appellants contend that they lost fourteen acres north of State Route 772 and that they should be compensated for the land's value. The loss of that land did not, however, result from McCann's action or inaction, but, rather, a mutual mistake regarding the boundary line between the two sisters' property. Appellants simply acquiescenced to State Route 772 as the boundary line.
 {¶ 30} For these reasons, we conclude the trial court correctly awarded summary judgment in favor of the appellees and Pike Water and that appellants' assignment of error is without merit. Accordingly, we hereby overrule appellants' assignment of error and hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellees recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J., Concurs in Judgment Only.
Abele, J. and Kline, J., Concur in Judgment and Opinion.
[1] This corrective deed apparently also changed an error in the legal description of the original conveyance to Pike Water.
[2] It is unclear from the record when the Smith survey was performed. Smith's affidavit states that appellant's retained him in 1999. Appellees state in their motion for summary judgment that the survey was conducted in 2002. Smith's legal description (and attached as an exhibit to appellees motion) bears a date of 2002.
[3] Pike Water entered an appearance as an appellee in the first appeal, but filed no brief in this appeal.
[4] The Shepherds also argued that they were entitled to judgment quieting title on the basis of estoppel. We, however, do not believe the trial court based its ruling on estoppel. "[E]stoppel requires that the record owners realize the trueboundary of their property, but allow the adjoining landowner to rely upon declarations or conduct regarding a boundary line which does not conform to the description in her title." (Emphasis added.) Matheson v. Morog (Feb. 2, 2001), Erie App. No. E-00-17. The facts of this case, as we discuss infra, show that the parties (even appellants) operated under the mistaken belief that State Route 772 was the boundary. As appellants did not "realize the true boundary line of their property," it is difficult to maintain the argument that they misrepresented the location of the line to the Shepherds and should be estopped from asserting its true location.