[Cite as *Powell v. Vanlandingham*, 2011-Ohio-3208.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

JOAN M. POWELL,                              :

    Plaintiff-Appellant,                 :        Case No.   10CA24

    vs.                                  :

STANLY[1] P. VANLANDINGHAM, et al.,     :  DECISION AND JUDGMENT ENTRY

    Defendants-Appellees.                :

_____

APPEARANCES:

APPELLANT PRO SE:            Joan M. Powell, 618 Third Street, Marietta, Ohio 45750

COUNSEL FOR APPELLEES:       Daniel A. Fouss, 311 Fourth Street, Marietta, Ohio 45750
_____
CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 6-24-11

ABELE, J.

{¶ 1}   This is an appeal from a Washington County Common Pleas Court judgment that declared the legal description of a disputed boundary line between the properties of Joan M. Powell, plaintiff below and appellant herein, and Stanly P. and Ruth A. Vanlandingham, defendants below and appellees herein.

{¶ 2}   Appellant raises the following assignments of error for review:

---

[1] The record contains inconsistent spellings of Mr. Vanlandingham's first name: Stanly and Stanley.   We have used the spelling as it appears on the trial court's final judgment entry.

FIRST ASSIGNMENT OF ERROR:

"THE JUDGE ERRED IN HIS DECISION DUE TO
INCORRECT INFORMATION GIVEN HIM IN DEFENDANT'S
BRIEF AND FINDING OF FACTS."

SECOND ASSIGNMENT OF ERROR:

"THE JUDGE MADE THE WRONG DECISION DUE TO
FABRICATIONS IN THE TESTIMONY OF THE
DEFENDANT."

THIRD ASSIGNMENT OF ERROR:

"THE COURT ERRED IN RULING FOR THE DEFENDANTS
WHEN THE WEIGHT OF THE EVIDENCE, DEEDS FOR
BOTH PROPERTIES, AND TESTIMONY BY THE SURVEYOR
PROVED THE PROPERTY IN QUESTION LEGALLY
BELONGS TO THE PLAINTIFF."

## I.  BACKGROUND

**{¶ 3}**   The present case involves a boundary line dispute between two neighbors who have lived next door to each other since 1974.   Appellees assert that in 1974, when they moved into their home, appellant and her now-deceased husband desired to erect a sixteen-foot privacy fence along the side of their patio next to appellees' home.   Appellees claim that before appellant and her husband constructed the fence, appellant's husband showed appellees where the boundary line rests, from a stone marker on the Third Street end of the property to a steel rod (sometimes referred to in the record and this opinion as an "iron pipe") in the ground near the alley.   Appellees state that appellant and her husband then erected the fence along this boundary line, which was the same as the boundary line set forth in a 1966 survey conducted by Franklin Blair (the Blair survey).   Appellees assert that from 1974 onward, despite appellant's claimed lack of knowledge, the parties acted in accordance with the 1974 boundary line until the summer

of 2007, when appellant expressed displeasure with appellees' placement of a fence.

{¶ 4}   In August 2007, appellant hired James M. Mulryan to survey her property. According to Mulryan's survey, appellees' fence line encroaches on appellant's property by .9 feet at one end and by .5 feet at another end.   Appellant requested appellees to remove the encroachments.   When attempts to settle the matter proved unsuccessful, appellant instituted the present lawsuit and requested the trial court to order appellees to remove the encroachments.

{¶ 5}   In their answer, appellees raised several affirmative defenses, including the defenses of estoppel, waiver, and acquiescence.   Appellees further asserted what appears, in substance, to be a counterclaim.   Appellees claimed that appellant acquiesced to the location of the boundary line, as described in 1974, and further "request[ed] an order of [the trial] Court establishing the boundary line between [the parties'] properties to be the boundary line agreed to in 1974, [and] a finding that [appellees] are not encroaching on [appellant's] property * * *."

## II.   TRIAL

{¶ 6}   On June 24, 2010, the court held a trial.   The parties, not surprisingly, presented conflicting evidence.   Appellant testified that appellees discussed with her the location of the boundary line before building their fence.   She stated that she told them that she did not agree with their ascertainment of the boundary line.   Appellant testified that after appellees built the fence, she hired Mulryan to perform a survey and that Mulryan's survey shows that appellees' fence encroaches on her property.

{¶ 7}   Appellant's surveyor, James M. Mulryan, stated that he reviewed appellant's deed to ascertain the location of her property.   He explained that her deed called for a total of 40 feet

of frontage on Third Street that extended in an easterly direction, at right angles, 180 feet to the alley, creating a rectangular-shaped parcel. Mulryan stated that he set pins where he believed the corners of appellant's property were located. Mulryan testified that if he were to use the iron pipe Mr. Vanlandingham referred to and run it to the stone on the front end of the property, then the boundary line would not conform to the deed. Mulryan testified that appellees' fence encroaches on appellant's property by .9 feet at the back corner of the fence and by .5 feet at the front corner of the fence. He explained that if Blair's survey were correct, then (1) appellant's property is only 38.5 feet wide, when the deed calls for a 40-foot wide parcel, and (2) appellees' property is 26.5 feet wide, when the deed calls for a 25-foot wide parcel.

{¶ 8} Mr. Vanlandingham testified that in 1974, shortly after he and his wife moved into the property, appellant and her now-deceased husband advised appellees that they were considering installing a fence and that they had a survey performed. According to Mr. Vanlandingham, appellant and her husband informed appellees that "the property line runs from the pipe to the stone." He explained that a stone sits on the Third Street end of the property and that the boundary line runs from this stone along a pipe that appellant and her husband dug up. Mr. Vanlandingham testified that since this 1974 conversation, the parties have acted as if the boundary line ran from the stone then along the pipe, as Mr. Powell had explained. He further observed that the Powells had a fence built along this line in 1974 and that it remained in place until 2006.

{¶ 9} Mr. Vanlandingham also stated that in 1998, he requested Blair to survey the Vanlandingham property and that this 1998 survey confirmed that the boundary line was as Mr. Vanlandingham had described and as Mr. Powell had indicated in 1974.

{¶ 10} Mr. Vanlandingham testified that before appellees installed their fence, they discussed with appellant the location of the boundary line. He explained that before they erected the fence, he used the Blair survey to locate the boundary line and that appellant agreed as to his location of the boundary line. Mr. Vanlandingham stated that before construction began, he ran a string from the stone in the front to the pipe in the alley to indicate the boundary line. He further explained that after marking the boundary line, he measured one inch off the string and then "another two inches or so to allow for the boards on the outside of the fence and ran another string three of four inches inside the property line string," so that the installers would set the posts in a manner such that (1) the fence would not encroach on appellant's property, and (2) the fence would be an inch or so inside his property. Mr. Vanlandingham stated that appellant did not object to the location of his string and that she did not object once the fence posts, which were installed approximately one week before the fence panels, were put in the ground.

{¶ 11} Mr. Vanlandingham testified that appellant's dispute as to the boundary line location did not arise until a few months after the fence had been completed, when appellant noticed water from appellees' down spout pooling on her property. Mr. Vanlandingham stated that appellant advised that she believed that the fence installers made a mistake. According to Mr. Vanlandingham, appellant informed him that she believed the fence on the front end of the property encroached onto her property. Mr. Vanlandingham stated that he then re-measured and ran the string again to ascertain whether the fence installers had indeed incorrectly installed part of the fence on appellant's property.

{¶ 12} Mr. Vanlandingham stated that appellant hired Mulryan, who determined that the boundary line was not from the stone to the pipe.

{¶ 13} Mr. Vanlandingham requested the court to find that the boundary line runs from the iron pipe to the stone, as Mr. Powell had explained in 1974.   Mr. Vanlandingham asserted: "that's the property line the Powells told us it was and we agreed with them, and Mr. Blair surveyed it and confirmed that and we've operated–we placed the fence with the understanding that that was the property line, and it's up until Mulryan * * * did the survey and placed pins someplace else; that's always been the property line."

{¶ 14} Moreover, appellees' surveyor, Charles Hughes, testified that he surveyed the boundary line between the iron pipe in the alley to the stone fronting Third Street and ascertained that appellees' fence did not encroach upon appellant's property.

{¶ 15} On rebuttal, appellant denied that any 1974 conversation occurred with appellees regarding the boundary line.   She further disputed Mr. Vanlandingham's contention that she did not object to his location of the boundary line before he installed the fence.   She testified that the day before the fence was installed, Mr. Vanlandingham asked her where the boundary line sits.  She told him that she thought it was where Blair had marked it when she and her husband had their patio screen installed in 1974.   According to appellant, Mr. Vanlandingham stated that he thought Blair was wrong and that he then placed the line where he thought it should be.

## III.   TRIAL COURT'S DECISION

{¶ 16} On July 21, 2010, the trial court found that: (1) in 1974, appellant and her now-deceased husband agreed with appellees to a common boundary line based upon the Blair survey; (2) in 1974, appellant and her husband built a fence along the now disputed line; (3) the parties have built fences in reliance upon the 1974 boundary line agreement, and they would not have done so had the 1974 conversation not occurred; (4) the boundary line the parties discussed

in 1974 runs from the stone to the pipe, and the parties have so used their respective properties since 1974; and (5) the parties had not disputed the location of the property line until water began to encroach on appellant's property.   The court thus adopted the appellees proposed legal description as set forth in the Hughes survey.   This appeal followed.

## IV.   PROCEDURAL MATTERS

{¶ 17} Before we address the merits of appellant's assignments of error, we first address some procedural issues.

## A.   FINAL APPEALABLE ORDER

{¶ 18} Appellate courts have jurisdiction to review the final orders of inferior courts within their districts.   Section 3(B)(2), Article IV, Ohio Constitution; R.C. 2505.02.   If an order is not final and appealable, then an appellate court has no jurisdiction to review the matter and it must be dismissed.   See General Acc. Ins. Co. v. Ins. Co. of N. America (1989), 44 Ohio St.3d 17, 20, 540 N.E.2d 266.   In the event that the parties involved in the appeal do not raise this jurisdictional issue, an appellate court is required to raise it sua sponte.   See Chef Italiano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, syllabus; Whitaker-Merrell v. Geupel Co. (1972), 29 Ohio St.2d 184, 186, 280 N.E.2d 922.

{¶ 19} "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment" or "[a]n order that affects a substantial right made in a special proceeding[.]"   R.C. 2505.02(B)(1) & (2).   "A final order * * * is one disposing of the whole case or some separate and distinct branch thereof."   Lantsberry v. Tilley

Lamp Co. (1971), 27 Ohio St.2d 303, 306, 272 N.E.2d 127.

{¶ 20} When a court issues a judgment that disposes of some claims but leaves other claims pending, the order is final and appealable only if the judgment complies with Civ.R. 54(B). That rule states:

> When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

{¶ 21} Civ.R. 54(B) allows a trial court to enter final judgment as to one or more, but fewer than all, claims in a multi-claim action only upon an express determination of "no just reason for delay." Without this language, a reviewing court ordinarily does not have jurisdiction and the appeal must be dismissed. Prod. Credit Assn. v. Hedges (1993), 87 Ohio App.3d 207, 210, 621 N.E.2d 1360, fn. 2; Kouns v. Pemberton (1992), 84 Ohio App.3d 499, 501, 617 N.E.2d 701.

{¶ 22} A trial court's failure to use Civ.R. 54(B) language in a multi-claim action will not prevent a final appealable order when the court's judgment otherwise renders the remaining claim or claims moot. The Ohio Supreme Court has recognized that even when a trial court does not expressly adjudicate all of the claims in a multi-claim action, "if the effect of the judgment as to some of the claims is to render moot the remaining claims * * * then compliance with Civ.R. 54(B) is not required to make the judgment final and appealable." General Acc. Ins.

Co. at 21; see, also, <u>Mtge. Electronic Registrations Sys. v. Mullins</u>, 161 Ohio App.3d 12, 2005-Ohio-2303, 829 N.E.2d 326, at ¶18.   See, generally, <u>Havel v. Villa St. Joseph</u>, Cuyahoga App. No. 94677, 2010-Ohio-5251 (recognizing that a final appealable order exists even when a trial court does not render an explicit judgment on an issue, so long as its judgment implicitly addresses that issue).

**{¶ 23}** In the case sub judice, we observe that the trial court did not enter a judgment that explicitly addressed appellant's encroachment claim.   Instead, the court entered judgment on appellees' counterclaim that they actually designated as an affirmative defense.[2]   The trial court's judgment declaring the boundary line is an implicit judgment against appellant regarding her encroachment claim and in favor of appellees regarding their counterclaim.   That is, the court describes the boundary line in such a manner that appellees' fence is within their property and does not encroach onto appellant's property.   Thus, the trial court's judgment declaring the legal description of the boundary line renders appellant's encroachment claim moot. Consequently, we do not believe the court's failure to enter judgment regarding the

---

[2]   "The difference between a defense and a counterclaim is that 'the latter is affirmative in nature, and asserts a separate cause of action, while the former serves to preclude recovery by asserting facts that defeat the plaintiff's right to recovery.' <u>Riley v. Montgomery</u> (June 30, 1983), Warren App. No. 88.    An affirmative defense generally refers to that which is offered to defeat an action by '"denying, justifying, or confessing and avoiding the plaintiff's cause of action.    It goes to the plaintiff's right and generally would not be considered an independent claim existing against the plaintiff."'"    <u>BAC Home Loans Servicing, L.P. v. Hall</u>, Warren App. No. CA2009-10-135, 2010-Ohio-3472, at ¶18, quoting <u>Riley</u>, quoting <u>Secrest v. Standard Oil Co.</u> (1963), 118 Ohio App. 270, 271, 194 N.E.2d 68.

In the case at bar, at least part of appellees' "affirmative defenses" assert a separate cause of action.    For instance, appellees request the trial court to enter a judgment declaring the existence of the boundary line.    Thus, we believe that appellees designated as an affirmative defenses is actually a counterclaim.    This is not fatal, however.    Civ.R. 8(C) permits a trial court to treat a counterclaim mistakenly asserted as an affirmative defense as a counterclaim (or vice versa).    The rule states:    "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation."    Moreover, Civ.R. 8(F) requires courts to

encroachment claim leaves us without a final appealable order and deprives us of jurisdiction.

## B.   PRO SE LITIGANT

**{¶ 24}** We further observe that appellant, a pro se litigant, does not separately argue her three assignments of error.   See App.R. 16(A)(7).   See, also, Keffer v. Cent. Mut. Ins. Co., Vinton App. No. 06CA652, 2007-Ohio-3984, at ¶8, fn. 2 ("While appellate courts may jointly consider two or more assignments of error, the parties do not have the same option in presenting their arguments.").   As we often recognize, however, we ordinarily afford considerable leniency to pro se litigants and do not necessarily hold them to the same standards as attorneys.   See, e.g., State v. Ritchie, Pickaway App. No. 10CA20, 2011-Ohio-164, at ¶5; Robb v. Smallwood, 165 Ohio App.3d 385, 2005-Ohio-5863, 846 N.E.2d 878, at ¶5; Whittington v. Kudlapur, Hocking App. No. 01CA1, 2001-Ohio-2525.   Although we will not "conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning," State ex rel. Karmasu v. Tate (1992), 83 Ohio App.3d 199, 206, 614 N.E.2d 827, we will consider a pro se litigant's appellant brief so long as it "contains at least some cognizable assignment of error."   Robb v. Smallwood at ¶5; see, also, Coleman v. Davis, Jackson App. No. 10CA5, 2011-Ohio-506, at ¶14 (considering pro se litigant's brief when it contains "some semblance of compliance" with appellate rules of practice and procedure).   In the case sub judice, we believe that appellant's brief contains at least some cognizable assignment of error that we may consider on its merits.

## V.   COGNIZABLE ASSIGNMENTS OF ERROR

**{¶ 25}** Appellant presents three assignments of error and each, in essence, challenges the

---

construe "[a]ll pleadings * * * [so] as to do substantial justice."

weight of the evidence.   Appellant contends that the trial court relied upon incorrect information

and fabricated testimony when ruling for appellees and that the court improperly afforded more

credibility to the Hughes survey than the Mulryan survey.   Her basic premise is that the trial

court erred in its credibility assessments, and she spends much of her argument rehashing her

version of the events that transpired between the parties.   She further contends that: (1) appellees

failed to establish that they acquired any part of her property by adverse possession; (2) the

parties' mutual mistake voids any agreement they may have reached regarding the boundary line;

and (3) appellees failed to prove that appellant acquiesced to the boundary line or that she is

estopped from asserting title to the disputed property.   For ease of discussion, we will address

appellant's arguments in a different order than presented in her brief.

## A.   STANDARD OF REVIEW

{¶ 26}  Generally, we will not reverse a judgment as against the manifest weight of the

evidence as long as some competent and credible evidence supports it.   See, e.g., Shemo v.

Mayfield Hts. (2000), 88 Ohio St.3d 7, 10, 722 N.E.2d 1018; C.E. Morris Co. v. Foley

Construction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.   This standard of review

is highly deferential and even "some" evidence is sufficient to support a court's judgment and to

prevent a reversal.   See Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989;

Willman v. Cole, Adams App. No. 01 CA725, 2002-Ohio-3596, at ¶24.

{¶ 27}  Moreover, "an appellate court should not substitute its judgment for that of the

trial court when there exists * * * competent and credible evidence supporting the findings of

fact and conclusion of law."   Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461

N.E.2d 1273.   Issues relating to the credibility of witnesses and the weight to be given the

evidence are primarily for the trier of fact.   As the court explained in <u>Seasons Coal Co.</u>:

>"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

Id.   Thus, a trial court may believe all, part, or none of the testimony of any witness who appears before it.   <u>Rogers v. Hill</u> (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438.

**{¶ 28}**   Although we ordinarily afford great deference to a trial court's factual findings, we do not afford any deference to a trial court's application of the law.   Instead, we independently review whether the trial court properly applied the law.   See <u>Lovett v. Carlisle</u>, 179 Ohio App.3d 182, 2008-Ohio-5852, 901 N.E.2d 255, at ¶16; <u>Pottmeyer v. Douglas</u>, Washington App. No. 10CA7, 2010-Ohio-5293, at ¶21.

**{¶ 29}**   Thus, in the case sub judice, to the extent appellant's assignments of error challenge factual findings, we apply a manifest-weight-of-the-evidence standard of review.   To the extent appellant challenges the trial court's application of the law, we apply a de novo standard of review.

## B.   ACQUIESCENCE

**{¶ 30}**   In the case at bar, the trial court essentially applied the doctrine of acquiescence when ruling in appellees' favor.   In <u>Burkitt v. Shepherd</u>, Pike App. No. 05CA754, 2006-Ohio-3673, at ¶15, we explained this doctrine as follows:

>" * * * * The doctrine of acquiescence is applied in instances when adjoining land owners occupy their respective properties up to a certain line and mutually recognize and treat that line as if it is the boundary that separates their properties.

See <u>Robinson v. Armstrong</u>, Guernsey App. No. 03CA12, 2004-Ohio-1463, at

¶35; <u>McConachie v. Meeks</u> (Sep. 21, 1999), Richland App. No. 98CA90; <u>Turpen</u>

<u>v. O'Dell</u> (Oct. 14, 1998), Washington App. No. 97CA2300. Acquiescence rests

on the practical reality that oftentimes, the true boundary line location is uncertain

and neighbors may themselves establish boundaries. <u>Richardson v. Winegardner</u>

(Nov. 2, 1999), Allen App. No. 1-99-56. To apply this doctrine: (1) adjoining

landowners must treat a specific line as the boundary; and (2) the line must be so

treated for a period of years, usually the period required for adverse possession.

<u>Robinson</u>, supra at ¶35; <u>Matheson v. Morog</u> (Feb. 2, 2001), Erie App. No.

E-00-17; <u>McGregor v. Hanson</u> (Jun. 16, 2000), Geauga App. No. 99-G-2228."

**{¶ 31}** In the case sub judice, after according due weight to the trial court's factual

findings, we believe that some evidence shows the existence of the two requirements necessary

to apply the doctrine of acquiescence. Mr. Vanlandingham stated that between 1974 and 2007,

the parties treated the boundary line as existing from the iron pipe to the stone, not as the

boundary line described in the Mulryan survey. He stated that in 1974, Mr. Powell showed him

the boundary line and that the Powells then had a fence built along this line that remained in

existence until 2006. According to Mr. Vanlandingham's testimony, the parties have thus

treated the boundary line as existing from the iron pipe to the stone for a period over twenty-one

years. While appellant may dispute Mr. Vanlandingham's testimony, the trial court obviously

opted to believe it, and his testimony constitutes evidence to support the court's judgment.

Consequently, the trial court did not err by applying the doctrine of acquiescence, and its findings

in this regard are not against the manifest weight of the evidence.

## C.   ESTOPPEL

**{¶ 32}**  Appellant further argues that the trial court erroneously relied upon the doctrine of estoppel when ruling for appellees.    We, however, do not believe the trial court based its ruling on estoppel. "'[E]stoppel requires that the record owners realize the true boundary of their property, but allow the adjoining landowner to rely upon declarations or conduct regarding a boundary line which does not conform to the description in her title.'" Burkitt, supra, at fn.4, quoting Matheson v. Morog (Feb. 2, 2001), Erie App. No. E-00-17.

**{¶ 33}**  The facts that the trial court chose to believe show that the parties, including appellant, operated under the belief that the boundary line extended from the iron pipe to the stone.   Some evidence exists that neither appellees nor appellant "realize[d] the true boundary line of their property."   Thus, by definition, the doctrine of estoppel cannot apply.

## D.   ADVERSE POSSESSION

**{¶ 34}**  Appellant additionally asserts that the trial court wrongly entered judgment in appellees' favor because appellees failed to prove that they acquired title over the disputed section of land by adverse possession.   As we have already discussed, the trial court's judgment is based upon the doctrine of acquiescence, not upon the doctrine of adverse possession.[3]

## E.   MUTUAL MISTAKE

**{¶ 35}**  Appellant next contends that the trial court erred by failing to apply the doctrine of

---

[3]  The doctrine of acquiescence exists separate and apart from the doctrine of adverse possession.    See Turpen, supra, citing Rutledge v. The Presbyterian Church of Johnstown (1914) 3 Ohio App. 177, and Ballard v. Tibboles (Nov. 8, 1991), Ottawa App. No. 91-OT-013 (holding that even in the absence of evidence of adverse possession, a trial court may find that a party's acquiescence in the use of a certain boundary line renders that line the legally recognizable boundary line between the parties).

mutual mistake.   She contends that because the parties were mutually mistaken as to the true

boundary line, she is entitled to now assert her rights to the property represented by the true

boundary line.   In support of this assertion, she refers to Hills v. Ludwig (1889), 46 Ohio St.

373, 380, 24 N.E. 596, in which the court stated: "[W]here adjoining proprietors, in attempting to

find the true line between them, by mistake fix upon an incorrect one, they may repudiate the

spurious line at any time before the statute of limitation has run."   Appellant then asserts that the

"statute of limitations" referred to is the twenty-one year period applicable to claims of adverse

possession.   Even by appellant's interpretation, however, the trial court did not err by failing to

apply some version of the doctrine of mutual mistake because, as the trial court found, the parties

treated the boundary line as extending from the iron pipe to the stone from at least 1974 through

2007.

## F.   CREDIBILITY ARGUMENTS

{¶ 36} We recognize that appellant vehemently disagrees with the trial court's findings of

fact.   We will not, however, second-guess the trial court's credibility assessments.   It is beyond

well-established that appellate courts must generally refrain from second-guessing trial court

decisions regarding credibility.   Here, under a manifest-weight-of-the- evidence standard,

appellees' testimony and evidence constitutes some competent and credible evidence to support

the trial court's judgment.   Again, it is not our role to "second guess" the trial court when it

chooses between two competing, but rational, versions of the facts.   As we explained in Bugg v.

Fancher, Highland App. No. 06CA12, 2007-Ohio-2019, at ¶9:

> "In applying the 'some competent credible evidence' standard, we should not
> reverse a judgment merely because the record contains evidence that could
> reasonably support a different conclusion.   It is the trier of fact's role to

determine what evidence is the most credible and convincing. The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to insure the decision is based upon reason and fact. We do not second guess a decision that has some basis in these two factors, even if we might see matters differently. Rather, we must defer to the trier of fact in that situation.

**{¶ 37}** In the case at bar, the trial court obviously chose to believe appellees' testimony regarding their and the Powells' treatment of the boundary line. We are ill-suited to review a cold written record and state that the trial court should have rather believed appellant's testimony and disbelieved appellees.

## VI. CONCLUSION

**{¶ 38}** Accordingly, based upon the foregoing reasons, we hereby overrule appellant's assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellees recover of appellants the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Kline, J. & McFarland, J.: Concur in Judgment & Opinion
                        For the Court

BY:_____
Peter B. Abele, Judge


NOTICE TO COUNSEL


Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.