[Cite as *Allread v. Holzapfel*, 2013-Ohio-3269.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE   COUNTY

| | | |
|---|---|---|
| RICHARD D. ALLREAD, et al. | : | |
| | : | Appellate Case No. 2012-CA-11 |
| Plaintiffs-Appellants | : | |
| | : | Trial Court Case No. 12-CV-245 |
| v. | : | |
| | : | |
| RONALD S. HOLZAPFEL, et al. | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

· · · · · · · · · ·

O P I N I O N

Rendered on the 26th day of July, 2013.

· · · · · · · · · ·

STEPHEN E. KLEIN, Atty. Reg. #0014351, Klein, Tomb & Eberly, LLP, 240 Bohanan Drive, Vandalia, Ohio 45377
        Attorney for Plaintiffs-Appellants, Richard D. Allread, et al.

GARY L. BROWN, Atty. Reg. #0005410, 414 Walnut Street, Suite B, Greenville, Ohio 45331
        Attorney for Defendant-Appellees Ronald S. Holzapfel, et al.

SCOTT D. RUDNICK, Atty. Reg. #0000853, 121 West Third Street, Greenville, Ohio 45331
        Attorney for Defendant-Appellee, The Farmers State Bank

· · · · · · · · · · · ·

FAIN, P.J.

{¶ 1}    Plaintiffs-appellants Richard and Phyllis Allread appeal from a judgment

rendered against them in their action to quiet title to a five-foot strip of land abutting the southern

surveyed boundary of their property, following a bench trial. The Allreads contend that the trial court erred by rejecting their claims of adverse possession and acquiescence. They also contend that the trial court erred by allowing them an easement by necessity to maintain a line of trees along the middle of the five-foot strip.

{¶ 2} Both the Allreads' adverse-possession and acquiescence claims are predicated upon a line of trees that they had planted along the middle of the five-foot strip, having erroneously believed the trees to have been planted just inside their side of the boundary line between the properties. Defendant-appellee Jill Holzapfel testified that it was her practice to mow the grass along the northern side of the trees. This testimony, which the trial court evidently credited, was sufficient to establish that the Allreads' use of the property was not exclusive against the true owners, the Holzapfels, entering their property and asserting their right to possession. Consequently, the trial court did not err in rejecting the adverse-possession claim.

{¶ 3} There is no evidence that the Allreads and the Holzapfels and the Holzapfels' predecessors in title mutually recognized and treated the line of trees as if it were the boundary line between the properties. Therefore, the trial court did not err in rejecting the acquiescence claim.

{¶ 4} Finally, we conclude that the trial court did err in allowing the Allreads an easement of necessity to maintain the trees. As the Allreads point out, they did not request an easement. Furthermore, the easement to maintain the trees is not necessary for them to make use of the land they own, since the trees are on land owned by the Holzapfels. Accordingly, that part of the judgment of the trial court granting an easement of necessity is Reversed and Vacated, and the judgment is Affirmed in all other repects.

## I.  Some Trees Grow in Greenville Township

{¶ 5}    Richard and Phyllis Allread were the owners of property abutting Hartzell Road, in Greenville Township, Darke County, Ohio.  In 1980, they planted some trees about three to four feet inside what they believed to be the southern border of their property, extending east from Hartzell Road.  The line of trees consisted of deciduous trees planted at twenty-foot intervals, with pine trees planted in the gaps between the deciduous trees.  The deciduous trees they planted survive today.  The pine trees have been short-lived, requiring regular replacement.  The trees were planted without any objection by the Allreads' southern neighbor, Dan Mannix.

{¶ 6}    The line of trees the Allreads planted did not extend all the way to their western border.  The last fifty feet consisted of forty feet of natural ground, and ten feet of fill dirt.  There were no structures or plants along this portion of the five-foot strip, other than grass.  The focus of the trial, and of the Allreads' claims, was the tree-line.

{¶ 7}    In 1982, Dan Hicks and his wife and family succeeded Mannix as the Allreads' southern neighbors.  In 1992, the defendants-appellees, Ronald and Jill Holzapfel, acquired the property to the south of the Allreads.

{¶ 8}    There was an incident in which Phyllis Allread became concerned that the Holzapfel children were playing on the Allreads' side of the property line.  She told them to stay on their side of the line.  Later, Phyllis Allread became concerned about the Holzapfels' dogs.  She complained to the Dog Warden, and the Holzapfels were cited.

{¶ 9}    Shortly after this, the Holzapfels hired a surveyor to determine exactly where the boundary was between the two properties.  The surveyor reported that the boundary was actually one to two feet north of the tree line.  When the Allreads learned of this, they, too, hired a surveyor.  His findings confirmed those of the Holzapfels' surveyor.  This action ensued.

## II.   The Course of Proceedings

{¶ 10}   The Allreads brought this action against the Holzapfels to quiet title to a five-foot strip of land south of the surveyed boundary line.   The Allreads claimed the strip under the doctrines of adverse possession and acquiescence.

{¶ 11}   The action was tried to the bench.   Phyllis and Richard Allread, Ronald and Jill Holzapfel, and one surveyor, testified at the trial.

{¶ 12}   The trial court rendered a judgment against the Allreads on their adverse-possession and acquiescence claims to quiet title.   The trial court did, however, allow the Allreads an easement by necessity to maintain the trees:

> While not proving their claim for adverse possession, the Plaintiffs have established a claim for use of Defendants' land immediately surrounding the trees for purposes of maintaining the trees.   An easement by necessity may be granted where entrance onto adjoining land is necessary for proper maintenance of one's [sic] own lands.   In this case, such easement is granted to the Plaintiffs since the trees planted by Plaintiffs require upkeep and since the trees are growing over both properties.   However, such easement does not allow replacement of trees that die nor does it allow placement of any improvements onto Defendants' land.   Costs of maintenance – and removal – are to be born [sic] by Plaintiffs.   Further, this easement is limited to a term of 10 years hereafter so that the Court does not create an impediment to Defendants' title nor establish a right in perpetuity.

{¶ 13}   From the judgment, the Allreads appeal.   The Holzapfels have neither appealed nor cross-appealed.

{¶ 14}   The Allreads' First Assignment of Error is as follows:

THE TRIAL COURT ERRED BY FAILING TO DECLARE THAT PLAINTIFF-APPELLANTS ACQUIRED TITLE TO THE DISPUTED STRIP BY ADVERSE POSSESSION OR BY ACQUIESCENCE.

### III.   The Allreads Failed to Prove that Their Possession and Use of the Disputed Strip Was Exclusive Against the True Owners Entering onto Their Property and Asserting Their Right to Possession

{¶ 15}   In support of their First Assignment of Error, the Allreads first contend that they are entitled to fee simple title to the disputed five-foot strip under the doctrine of adverse possession.

{¶ 16}   The doctrine of adverse possession, being a means by which someone without even colorable title to land may acquire fee simple title as a result of the owner's mere inaction, is disfavored in the law.  *Grace v. Koch*, 81 Ohio St.3d 577, 580, 1998-Ohio-607, 692 N.E.2d 1009.  "[T]o establish adversity, '[t]he tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest.' " *Id*., at 581, quoting *Darling v. Ennis* (1980), 138 Vt. 311, 313, 415 A.2d 228, 230.

{¶ 17}   Adverse possession must be proven by clear and convincing evidence.  *Grace v. Koch*, at 580-581.

{¶ 18}   "Use of the property must be exclusive against the true owner entering the property and asserting his right to possession."  *Grace v. Koch*, 1st Dist. Hamilton No.

C-950802, 1996 WL 577843 (Oct. 9, 1996), affirmed 81 Ohio St.3d 577, *supra*.[1]

{¶ 19}   In the case before us, Jill Holzapfel, who regularly mowed the grass, testified that she mowed the grass on the north side of the tree line:

> Q.   And how would you mow?
>
> A.   Up to the trees and then around it and back through.
>
> Q.   And what kind of a mower were you using?
>
> A.   John Deere with a 54-inch deck on it.
>
> Q.   Okay.   So you mowed – be to the north side of the trees then?
>
> A.   Be to the north side of the trees, yes.
>
> Q.   It would be between the Allreads' southern driveway boundary and the tree line.   You mowed in between there to some extent.
>
> A.   Yes.   To some extent.   Not completely up and down.   To some extent.
>
> * * *
>
> Q.   And when you mowed north of the tree line, was there any objection by the Allreads about that?
>
> A.   No, sir.

{¶ 20}   Although the testimony quoted above is not entirely unequivocal, in our view it permitted the trial court to find that Jill Holzapfel mowed the grass on the north side of the tree line, without objection by the Allreads.   This testimony was disputed.   The Allreads testified

---

[1] Although the Supreme Court of Ohio, in affirming the First District Court of Appeals, cited the opinion of the court of appeals approvingly, it decided the case on the issue of adversity, and never reached the issue of exclusivity.

that they never saw the Holzapfels mowing north of the tree line, and never saw evidence, in the form of grass clippings, that the Holzapfels mowed north of the tree line. Nevertheless, the trial court, as the finder of fact, was permitted to credit Jill Holzapfel's testimony.

{¶ 21} By contrast, in *Kaufman v. Gieskan Enterprises, Ltd.*, 3d Dist. Putnam No. 12-02-04, 2003-Ohio-1027, ¶ 41 - 42, where the titleholders testified that they had picked branches and occasionally mowed in the disputed area, and the trial court rendered judgment for the party claiming adverse possession, the court of appeals affirmed, holding that "[f]rom the record and resulting judgment, it is apparent" that the trial court concluded that the testimony of the titleholders concerning their alleged use of the disputed area lacked credibility. In the case before us, it is apparent from the evidence and the resulting judgment that the trial court credited Jill Holzapfel's testimony that she mowed the grass north of the tree line.

{¶ 22} The issue, then, is whether an owner's mowing grass on a strip of land claimed by an adverse possessor is sufficient to defeat the element of exclusivity required to sustain a claim of adverse possession. This issue is close.

{¶ 23} In *Beener v. Spahr*, 2d Dist. Clark No. 2000-CA-40, 2000 WL 1840066, *8 (Dec. 15, 2000), we held that a claim of adverse possession can be established solely by mowing grass in the disputed area. This panel has some reservations about the correctness of that holding, in view of the heavy presumptions against adverse possession. *See Ballard v. Tibboles*, 6th Dist. Ottawa No. 91-OT-013, 1991 WL 251957, *5 (Nov. 8, 1991). Nevertheless, even if mowing grass is not sufficient to establish adverse possession, we conclude that it is sufficient to destroy the element of exclusivity required for adverse possession. The disfavored status of adverse possession, together with the requirement of its proof by clear and convincing evidence,

establishes an asymmetry between what is required to prove adverse possession and what is required to disprove it. This asymmetry was touched upon in the context of permissive versus hostile use in *Grace v. Koch*, 1st Dist., 1996 WL 577843, *supra*, at *7: "A twilight between the occupier's burden to prove hostile use and the titleholder's burden to prove permissive use cuts against the occupier claiming hostile use."

{¶ 24} In *Christian v. Root*, 2d Dist. Darke No. 1218, 1989 WL 20292, *4-5 (March 9, 1989), we considered a titleholder's testimony that he was on the disputed land "approximately once a year" to "hunt game and mushrooms and fish" to be sufficient to defeat the element of exclusivity required for adverse possession, illustrating that it does not take much use of land by the titleholder to defeat the exclusivity element of adverse possession.

{¶ 25} We conclude that Jill Holzapfel's act of mowing the grass on the north side of the tree line is sufficient, if barely, to defeat the element of exclusive possession and use required for adverse possession.

## IV.  The Allreads Failed to Prove that the Line of Trees
## Was a Line Mutually Recognized and Treated by the Parties
## as if it Were the Boundary Line Between the Properties

{¶ 26} The Allreads also invoked the doctrine of acquiescence to support their quiet title action. "The doctrine of acquiescence is applied in instances where adjoining land owners occupy their respective properties up to a certain line and mutually recognize and treat that line as if it were the boundary separating their properties." *Ballard v. Tibboles, supra*, at *5. The cases finding acquiescence typically involve a fence erected to demark the boundary between

properties, although one case involved a state highway serving that purpose. *Burkitt v. Shepard*, 4th Dist. Pike No. 05CA744, 2006-Ohio-3673.

{¶ 27} Like a claim of adverse possession, a claim of acquiescence requires clear and convincing proof. *Thomas v. Wise*, 6th Dist. Sandusky No. S-06-043, 2007-Ohio-3467, ¶ 17.

{¶ 28} *Ballard v. Tibboles, supra*, involved rose bushes planted by the claimant on the titleholder's side of the property line. The court of appeals held, at *6, that there was a genuine issue of fact whether the titleholders had acquiesced to the boundary line represented by the rose bushes, requiring reversal of the summary judgment that had been rendered against them:

> Further, the deposition testimony of the parties created a question of fact as to whether the Ballards acquiesced in the roses being a mutually recognized boundary. In this respect, this cause is not analogous to those cases where the parties mutually construct and maintain a fence for a period of years and then one of the parties or his successor in interest seeks to have the true line supplant the boundary established by acquiescence. *Bobo* [*v. Richmond*, 25 Ohio St. 115 (1874)] (improvements by both parties up to line); *Helbling v. The Werk Realty Co.* (1913), 2 Ohio App. 478 (Both parties maintained the fence. Prevailing party farmed disputed property.). Therefore, we find that a question of fact as to acquiescence exists in this case, and appellees could not prevail on the basis of that doctrine on their motion for summary judgment.

{¶ 29} In *Ballard*, the titleholders had helped in planting the rose bushes allegedly recognized by both owners as demarking the boundary line. *Id.*, at *5.

{¶ 30} In *Bobo v. Richmond, supra*, the titleholder had built a fence to demark his

boundary line, and then claimed that he owned property on the other side of that line. The defense that he had acquiesced to the line he had established by the fence was held to be a good defense in the action. *Id.*, at 116. By contrast, in the case before us, it is the Allreads who planted the trees, not the titleholder. Unlike the owner in *Bobo* who worked an estoppel against himself by erecting the fence, the Allreads seek to work an estoppel against the Holzapfels as a result of the tree line the Allreads planted.

{¶ 31} In *Burkitt v. Shepard, supra*, State Route 772 was the line in which the titleholder was alleged to have acquiesced. The court of appeals, at ¶ 22, rejected evidence of activity on the other side of State Route 772 as proof that the titleholders had not acquiesced in the highway as the boundary line:

> The rebuttal evidentiary materials consisted of two Morris Burkitt affidavits. The first was included in their summary judgment motion and stated, inter alia, that "[p]rior to and following the 1991 survey ... [he] maintained the land north of State Route 772 by mowing the pasture, bush hogging the area, maintaining fence line, as well as livestock that was included within the fourteen (14) acres north of State Route 772." We do not believe that this establishes that Burkitt and his wife regarded the land north of the roadway as their own. These acts may have been performed *gratis* for either his mother-in-law or sister-in-law. Further, nothing in the affidavit explicitly states that Burkitt considered that any land north of State Route 772 belonged to him and his wife.

{¶ 32} We conclude that *Burkitt* is distinguishable. As noted, the two sets of property owners in that case were relatives. Thus, the acts performed by the titleholders north of State

Route 772 could be discounted as merely intended to assist their relatives to the north. Also significant in that case is the fact that the titleholders had been able to see, in plain view, their nephew building a house on the area that they actually owned north of State Route 772. *Id.* ¶ 26. These facts present a stronger case for acquiescence than the facts in the case before us.

{¶ 33} Both Ronald and Jill Holzapfel testified that they understood the boundary between their property and the Allreads' to be in the general area of the line of trees, which, in fact, it was, lying just one to two feet north of the trees. Neither of the Holzapfels testified that they understood that the tree line was the boundary line between the properties. On these facts, the trial court could find that acquiescence in the line of trees as the line demarking the boundary between the properties was not proven by clear and convincing evidence.

{¶ 34} The Allreads' First Assignment of Error is overruled.

### V. The Trial Court Erred in Allowing the Allreads
### an Easement by Necessity in the Disputed Strip

{¶ 35} The Allreads' Second Assignment of Error is as follows:

THE TRIAL COURT ERRED BY GRANTING AN EASEMENT OF NECESSITY.

{¶ 36} At the end of the judgment of the trial court, as quoted in Part II, above, the trial court allowed the Allreads an easement by necessity to maintain the trees they had planted in the disputed five-foot strip. They contend that the trial court had no authority to do so.

{¶ 37} First, as the Allreads point out, they did not seek the relief the trial court ordered.

They claimed title to the disputed strip, not an easement to maintain the trees they planted on the disputed strip.

{¶ 38}  The Supreme Court of Ohio described the nature of an easement by necessity in *Renner v. Johnson*, 2 Ohio St.2d 195, 197, 207 N.E.2d 751 (1965):

> Where an owner of two parcels of land subjects one of them to an easement in favor of the other and where such owner sells the dominant parcel without providing for that easement in his grant and where the enjoyment of such easement is reasonably necessary to the beneficial enjoyment of the parcel granted, it may reasonably be inferred that the parties mutually intended there should have been a grant of such easement.  Because of the right of the grantee to require reformation of the deed to set forth the mutual intent of the parties, it is often held that the grant of such an easement will be implied.  *See Ciski v. Wentworth* (1930), 122 Ohio St. 487, 172 N.E. 276.

{¶ 39}  "An implied easement or way of necessity is based upon the theory that without it the grantor or grantee, as the case may be, can not make use of his land.  It has been stated that 'necessity does not of itself create a right of way, but is said to furnish evidence of the grantor's intention to convey a right of way and, therefore, raises an implication of grant.' " *Trattar v. Rausch*, 154 Ohio St. 286, 293, 95 N.E.2d 685 (1950).

{¶ 40}  Both the *Renner* and *Trattar* cases involved an implied grant of an easement when the ownership of one parcel of land was severed from the ownership of an adjoining parcel of land, with the result that the owner of one parcel required access through the other in order to make use of his land.  In *Renner*, the owners of one parcel required an easement across the other

in order to gain access to public sewer and water lines. In *Trattar*, the owners of one parcel required an easement of access across the other in order to enter upon their property.

{¶ 41}   In the case before us, no implied grant of easement has been shown to have been created at a time when ownership of the property now owned by the Allreads was severed from the ownership of the property now owned by the Holzapfels. When the trees were planted in 1980, the two parcels were owned by different persons.

{¶ 42}   Furthermore, maintenance of the trees they have planted is not necessary for the Allreads to make use of their land. "On a severance of ownership of property, a use to which one part of the property has been subjected for the benefit of another part will not be recognized as an implied easement unless the use is reasonably necessary to the enjoyment of the dominate estate; convenience alone is not enough." *Trattar v. Rausch,* paragraph six of syllabus. The evidence in the record does not support a finding that the Allreads must have an easement across the Holzapfels' property in order to make use of the Allreads' land.

{¶ 43}   If one property owner's mere enjoyment of the aesthetic character of some feature upon an adjacent property were deemed to be sufficient to support a finding of an easement by necessity, then property owners could enforce legal rights to limit the ability of the owners of adjacent property to exercise dominion over their own land. We do not understand this to be the law of Ohio where the creation of a nuisance is not involved.

{¶ 44}   The Allreads' Second Assignment of Error is sustained.


## VI.   Conclusion

{¶ 45}   The Allreads' First Assignment of Error having been overruled, and their Second

Assignment of Error having been sustained, that part of the judgment of the trial court granting them an easement by necessity, and ordering them to bear the expenses of maintaining and removing the trees, is Reversed and Vacated; and the judgment of the trial court is Affirmed in all other respects.

· · · · · · · · · · · · ·

HALL and WELBAUM, JJ., concur.

Copies mailed to:

Stephen E. Klein
Gary L. Brown
Scott D. Rudnick
Hon. Jonathan P. Hein